313 So.2d 581 (1975)
STATE of Louisiana
v.
Bertrand BROWN.
No. 55794.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*582 Preston N. Aucoin, Ville Platte, for defendant-appellant.
William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. William Pucheu, Dist. Atty., A. Bruce Rozas, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On September 21, 1967 defendant was indicted for the murder of Andrew Hickerson. On October 22-23, 1967 the defendant was tried before a jury and was found guilty of manslaughter. During the trial numerous bills of exceptions were reserved, and, although these bills were presented to the trial judge for signature, the appeal was never perfected.
After habeas corpus proceedings this court ordered an out-of-time appeal on September 13, 1974. An attorney (who did not represent defendant at the trial) was appointed to represent defendant on appeal.
Andrew Hickerson was an officer in the Ville Platte police department. On July 4, 1967 Hickerson, accompanied by a deputy sheriff, went into a bar in Ville Platte to serve an arrest warrant on the defendant for his alleged participation in an aggravated assault and battery case. The other officer placed the defendant under arrest, and the defendant began to accompany the officers out of the bar. As they reached the door the defendant turned on Officer Hickerson and pushed him. Officer Hickerson struck defendant with his nightstick. After a brief scuffle the defendant drew a gun and fatally shot Officer Hickerson.
*583 The defense contended that the defendant was severely beaten by Officer Hickerson. The defense of the case was based on the claim that the defendant attempted to withdraw from the fight and surrender but that Officer Hickerson kept hitting the defendant so that, finally, in order to protect himself, the defendant pulled out his gun and fired at the officer.
Counsel for the appellant has reviewed the record and presented eight specifications of errors to this court upon which he seeks reversal of the conviction.
We reverse because of the error in instructing the jury. Two other specifications, not demonstrating reversible error in themselves, are, nevertheless, discussed for guidance in any future trial of this case.
Defendant contends that the trial judge erred when he refused to give the jury a specific instruction concerning self-defense. The defendant's basic contention throughout the entire trial was that, although at one point he resisted the officer, he subsequently submitted, but the officer continued to beat him with his nightstick. The jury was charged that a person could not rely on the doctrine of self-defense when he was resisting a lawful arrest. The defendant asked that the jury also be charged concerning the right of an aggressor to claim the benefit of the self-defense rule if he withdraws from the conflict and the other party knows or should know that he intended to withdraw. The defendant properly contended that if the officer continued to beat him after he had submitted he then had the right to defend himself.
The defendant requested that R.S. 14:21[1] be read to the jury.
C.Cr.P. 807 states that the judge shall give a requested special charge if: (1) it does not require qualification, limitation or explanation, (2) it is wholly correct, (3) it is pertinent and (4) it is not included in the general charge.
The requested charge was obviously a correct statement of the law since it was a quotation of the statute. It did not need qualification, limitation or explanation. The State argues, however, that the charge did not meet the other two requirements of C.Cr.P. 807.
The first question is whether the charge was relevant. Was there evidence upon which the jury could base a finding that the defendant submitted to the officers' authority, was nevertheless beaten by the officer, retreated as far as possible, and then only as a last resort pulled his gun and shot the officer? Hubert Aclise, called by the State on its case in chief, was an eyewitness to the incident. He testified that the defendant was accompanying the officers to the door of the bar when Officer Hickerson took his nightstick and started beating the defendant on the head. The witness testified that the defendant was struck several times on the head, that he retreated into the corner to avoid the blows, that he begged the officer to stop beating him and that finally he tripped backward over a table, falling to the floor. The witness also testified that even after the defendant was on the floor the officer approached him with his nightstick to strike the defendant. Defendant, on his back, tried to avoid the stick by kicking, but the officer continued to strike him until he was shot. If the jury believed this testimony, an instruction concerning the right of an aggressor to rely on the self-defense rule after he retreats would have been relevant and pertinent to the issues.
The State argues that this rule was included in the general charge. The trial judge stated in his general charge:
"In cases of sudden affray, or conflict, a homicide is not excusable on the ground *584 of self defense unless the accused retreats as far as he safely can in order to avoid the violence of the deceased, and the necessity to take his life. If he fails to do this, the homicide would be manslaughter, at least. If the assault is so fierce as to endanger his life or his person by retreating, and his only safety is to kill his adversary, this he may do in defense of his person.
"But if a man who is not at fault is suddenly assaulted by another who intends to kill him or to inflict on him great bodily harm, he is not bound to retreat at all, but he may stand his ground and kill his assailant, if there be a reasonable, apparent necessity for so doing to save his life, or to protect his person."
This part of the general charge deals with the duty of the accused to retreat, and is different from the charge requested. The jury was not informed that even an aggressor can plead self-defense if he has withdrawn from the affray in such a way that the victim should know the defendant intended to discontinue the conflict.
It was error to deny the instruction.
Defendant also contended that the trial judge erred in giving two special charges requested by the State. These charges instructed the jury that the defendant did not have the right to resist a lawful arrest and that an officer had the right to use as much force as necessary in subduing a person he is lawfully arresting. Defendant points out that there was no explanation of the term "lawfully arrested" so that the charge could be misleading if the jury felt that the defendant did not have the right to resist the officer even though the officer was unnecessarily beating him.
Although the charge was a correct statement of the law and was pertinent to the case, under the peculiar facts of this case (the sole defense was justification), the charge either should have been explained or not given. The State argues that the charge was not given by the trial judge. However, we do not have the transcript of what the judge read to the jury and the trial judge in his per curiam does not deny that he gave the charge. The trial judge stated that the charge was "pertinent." It must be assumed that he gave the charge.
Another assigned error concerns whether the trial judge properly refused to dismiss prospective juror Hypolite Johnson for cause. Hypolite Johnson admitted when examined by the district attorney that he had formed an opinion about the case from the newspaper accounts he had read. The defense attorney pursued this point:
"Q. Mr. Johnson, you admitted that from reading the newspapers you had formed some kind of idea or opinion about the guilt or the innocence of the defendant in this case. Now this opinion that you have formed, would it take evidence in this trial contradicting what you have held to change that opinion?
"A. Well,
"By the Court: I believe you stated while ago when the District Attorney was interrogating you that that idea you have would yield to evidence.
"A. That's right.
"By Mr. McGee, Attorney for Defendant: Yes sir, if the Court would permit, this is a different question. In other words, it would take evidence to make it yield. That's what the question is.
"Q. Would it take evidence to make your opinion yield? In other words
"A. That's right.
"Q. It would take evidence to make your opinion yield?
"By Mr. Duplechin, Attorney for Defendant: Your Honor, we challenge him for cause."
The trial judge then stated his opinion of the law:
"By the Court: He said he had an idea.

*585 He also stated that this idea of whatever idea he has would yield from the evidence produced on the stand.
"By Mr. McGee, Attorney for Defendant: Yes sir, but on those points on which
"By the Court: Now if he would say, No, the evidence will not make me change my mind, then you would have a good challenge."
Former R.S. 15:351 stated that a juror was not subject to challenge for cause because he had a preconceived opinion about the case if that opinion would "yield to the evidence." At the time of the trial this was no longer the law. C.Cr.P. 797 had changed the law on this point. In the Official Revision Comment to article 797 the reason for the rejection of this rule was explained:
"(b) In Clause (2) of this article, relative to the juror's opinion on guilt or innocence, the language of the A.L.I. Code of Criminal Procedure, § 277(j) is substituted for the provisions of former R.S. 15:351(1). The latter provisions, which were disjunctively written and confusing, read in part: `an opinion. . . which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror.' The provisions were not only confusing, but in conflict with the legal presumption that the defendant is innocent until proven guilty. Even though an opinion that the defendant is guilty will yield to evidence, the burden of proof is nevertheless placed on the defendant to overcome the opinion. The A.L.I. provision, used in the above article, requires that the juror must be able to render an impartial verdict according to both the law and the evidence, and the law, of course, presumes the innocence of the defendant."
This juror was finally challenged peremptorily.
The examination of Hypolite Johnson was relatively brief, but, considered in its entirety, it is clear that Johnson was not disqualified. He truthfully disclosed that he had formed an opinion, one which, however, he stated he would put aside, to decide the case solely from the evidence and the law. He seemed to understand the presumption of innocence, when questioned by the judge, and agreed that the State had the burden of proving guilt beyond a reasonable doubt, and that the defendant need prove nothing.
The only answer which might have disqualified Johnson was "That's right," when he was asked "Would it take evidence to make your opinion yield?" He was asked no questions after that point. The examination as a whole did not demonstrate partiality. The trial judge was satisfied, and we think correctly, that Johnson could have rendered "an impartial verdict according to the law and the evidence." C.Cr.P. 797(2).
Although the trial court employed an outmoded rule, it was not error to deny the challenge for cause.
The remaining five assigned errors argued by the defendant all deal with alleged errors in the opening and closing argument of the district attorney. Unfortunately, the parts of the statements which were objected to were not recorded so that this court does not have the transcript of the statements before it.
R.S. 15:291, the applicable provision on the recordation of the proceedings at the time of this trial, states:
"The testimony of the witnesses on the question of guilt or innocence may be taken down under the supervision of the court and in order to explain any bill of exception which may be taken by counsel for the accused, the accused shall have the right, if he chooses, to have all of the testimony so taken made a part of the transcript; provided, that any accused desiring to send up the testimony *586 of all of the witnesses so taken, shall pay for the same, and provided further, that the said testimony shall be considered only in explanation of the bills of exception reserved during the trial on behalf of the accused."
The law did not require that the arguments of counsel be recorded, and we are not presented with a failure to preserve the record to support a bill of exception properly taken. (C.Cr.P. 843).
The first alleged error is that the opening statement of the State did not fulfill the requirements of C.Cr.P. 766 in that it did not specify the evidence the State intended to use to prove the crime. Article 766 only requires that the State "set forth, in general terms, the nature of the evidence" to be used. The trial judge's per curiam to this bill indicates that the opening statement in general terms did set forth the evidence the State intended to use.
Defendant also alleges that the district attorney made a prejudicial and illegal statement to the jury during his closing argument. The defense contends (and neither the State nor the trial judge in his per curiam deny) that the district attorney stated to the jury that he knew the victim personally and that "he believed the decedent had more sense than to attack the defendant without justification." This statement directly contradicts the basis of the defense. This statement was improper. The district attorney is not allowed to testify to facts within his personal knowledge and not in evidence during his closing argument. By undermining the sole basis of the defense, the district attorney added to the evidence his personal opinion that the defendant was guilty. Such statements of personal opinion by the prosecutor based on evidence outside the record are forbidden during the closing argument of the State. C.Cr.P. 774; State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). This statement did not require the granting of the defense motion for a mistrial under C.Cr.P. 770.
The trial judge, as provided in C.Cr.P. 771, admonished the jury to disregard the prosecutor's comment, and we cannot, as the defense urges, find that the trial court abused its discretion in failing to grant a mistrial.
The conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
SANDERS, C.J., dissents.
SUMMERS, J., dissents and will assign reasons.
BARHAM, J., concurs on the issue of voir-dire examination.
MARCUS, J., dissents.
SUMMERS, Justice (dissenting).
The effect of the Court's holding is to reverse the trial judge on the ground that there was evidence in the record upon which the jury could have based a finding of self-defense.
The complete factual context refutes such a finding. Defendant was attempting an escape from the officer who had him in custody and provoked a conflict in furtherance of this effort. After he shot the officer, he accomplished this escape.
The sole evidence, relied upon by the majority to support its finding that evidence had been presented upon which the jury could find that the plea of self-defense was justified, is the testimony of Hubert Aclise. When this testimony is taken as a whole it becomes apparent that defendant was not defending himself. The obvious inference to be drawn from the fact that the defendant shot the police officer five times is that he was not defending himself, but was engaged in an affirmative effort to subdue the arresting officer. He continued shooting after the first shot stunned the officer. His resistance to the *587 arrest was active and continuous. Even when he accidently fell to the floor by stumbling over a table he persisted in the assault upon the arresting officer by kicking. At no time did his aggressive attitude cease despite his verbal plea to the officer to stop hitting him.
In my view the police officer had every right to subdue the defendant by the use of whatever force was necessary under the circumstances. He was attempting to fulfill this responsibility when he was shot. Defendant did not withdraw from the conflict which he instigated. To the contrary, this incident was one continuous series of acts all of which constituted the conflict. In summary, there was no evidence of withdrawal from the conflict in good faith in such a manner that the peace officer knew, or should have known, that he desired to withdraw and discontinue the conflict.
I would affirm the conviction and sentence.
NOTES
[1] "A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." R.S. 14:21.