347 So.2d 1112 (1977)
STATE of Louisiana
v.
Aaron Wayne BRENT.
No. 59092.
Supreme Court of Louisiana.
June 20, 1977.
*1113 Frank J. Gremillion, Hynes & Gremillion, Baton Rouge, for defendant-appellant.
*1114 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., A. J. Marabella, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Brent was indicted in January, 1976, with first degree murder of Ledell Mac Harrison which took place on April 23, 1976 in Baton Rouge, Louisiana. Thereafter the state on its own motion amended the indictment for first degree murder to murder in the second degree. Jury trial was had in October of 1976, and defendant Brent was found guilty as charged and sentenced to mandatory life imprisonment. Defendant relies on eleven assignments of error to assert that his conviction should be reversed and his sentence vacated.[1] The assignments are in four groups and will be treated accordingly.
There is no doubt that defendant killed Ledell Harrison; he admits that. The version of the facts that he advances, however, is one of a killing in self-defense, an assertion which, if accepted, would exculpate him from criminal responsibility for that act.
The shooting incident took place in this way. Ledell Harrison (the decedent) was walking down a sidewalk beside his sister Georgia Mae Harrison (who uses the name of "Pie" or "Gangster Pie"). They were accompanied by Lisa Hatch and Joyce Hatch who were walking side by side ahead of them. They heard a loud sound, like the hitting of brakes, and turned to see a car pulled up beside them and defendant Brent standing beside the back door holding a gun in his hand. Three other people were in the car. Brent ordered them to halt; Lisa reached for her purse; Brent ordered them to halt again, pointing the gun at Lisa. She took her hand away from her purse, and then defendant turned and shot Harrison, killing him. He also shot Georgia Harrison three times (she survived), apparently as she came to the aid of, or stepped in front of, her brother. These events took place in the space of a very few seconds, and afterward all the participants, except, of course Ledell Harrison, scattered. Later, when Brent learned from a news broadcast that Harrison had died, he turned himself in to police.
Defendant took the stand at trial and testified that as he stood facing the group he heard Harrison call for a gun, and (a bit incongruously) he saw a gun on Harrison. He fired at Harrison, he said, when Harrison made a turning motion to the right, and he struck "Pie" when she jumped between him and Harrison. Additional defense evidence as to the precipitating cause of the altercation will be discussed hereinafter in our discussion of the major assignments of error in this case.
ASSIGNMENT OF ERRORS NOS. 1 and 2.
Defendant argues that the trial court erred in instructing the jury as to the penalty provision of the crime, and in excusing for cause a prospective juror who indicated that she would not return a guilty verdict because of the severity of the penalty.
It is established in Louisiana law that a trial judge may, if he chooses to, instruct jurors on the applicable penalty in the event of conviction. State v. Blackwell, 298 So.2d 798 (La.1974). His so informing the jurors of the penalty on voir dire examination rather than later, in his instructions, is likewise permissible. Defendant does not argue that the rule is otherwise. Instead he takes the position that if the penalty is properly placed before the jury for its consideration in deciding the case (as was done in this case), then the trial court erred when it excused for cause a prospective juror (Ms. David) who stated that she could never vote guilty even if the state had proved beyond a *1115 reasonable doubt that defendant was guilty because she would not want to see the accused sentenced to life imprisonment. Defendant argues that when the judge refused to allow on the jury a person who would likely acquit, irrespective of the facts, rather than find guilt with its attendant mandatory life sentence, he effectively deprived defendant of a meaningful utilization of an argument otherwise available to him. We assume, although, the defendant does not so state, that he bases this argument on the theory that the excusal of this juror for cause was a denial of due process of law.
The juror was questioned at length by both the state's attorney, the defense attorney, and the judge. She stated several times that she could not vote for a guilty verdict even if she believed that the state had carried its burden beyond a reasonable doubt. She said that she could not vote for any guilty verdict, even a responsive verdict, knowing the defendant would go to prison. Although she was "rehabilitated" somewhat and did finally say that she could come up with a decision that was right regardless of the penalty, we are of the view that this prospective juror was so consistently adamant about not returning a guilty verdict no matter what the state proved, that she was properly excused for cause. We so conclude notwithstanding the fact that our decision in State v. Blackwell, supra, affords the trial judge the discretion to allow or disallow instructions and arguments to the jury relative to penalty. This result is neither unfair nor a violation of due process, and it is a reasonable one considering the predominant need to have fair yet open-minded jurors.
ASSIGNMENTS OF ERROR NOS. 3, 4, 5, 6, 9 and 10.
Each of these assignments deals with the appellant's attempt to introduce evidence of threats upon his life by the decedent and his companions.[2] He wanted to introduce the testimony in order to support his contention of self-defense. In order to appreciate this argument, we must put it in the context of the other facts brought out at the trial. The incident which eventually led to the shooting of Ledell Harrison evidently began one week before, apparently on a Saturday night, when Sandra Collins, defendant Aaron Brent's girl friend, was cut in a knife fight with decedent's sister Georgia Mae Harrison. In the following week, defendant was approached and berated by Georgia Mae Harrison; he allegedly received, communicated through others (see footnote two above) apparent threats upon his life; and he more or less remained confined to his house, purportedly in fear. He testified that he was in effect tired of running or hiding so he went out and bought a gun and on the day of the incident, a Friday, he was advised by his sister that Georgia *1116 Mae Harrison, and her brother Ledell (the victim) and two others had come by his house looking for him. That knowledge, coupled with the various threats communicated to him, prompted him, he said, to look for the two Harrisons so as to confront them with his gun and scare them into letting him alone. It was this background, particularly the information that some twenty minutes before, Ledell and Georgia Mae Harrison had gone by his house looking for him, which precipitated the shooting incident.
In a homicide case, evidence of the victim's reputation for violence or aggression may be introduced in support of the accused's claim of self-defense. The evidence of decedent's character is introduced, not to prove the acts of the deceased, but to establish the accused's apprehension and the reasonableness of his defensive measures. 2 Weinstein's Evidence, § 404[06] (1976); McCormick, Evidence § 160 at 339 (1954). Defendant in this case wanted to reveal to the jury the threats made against him by the victim and the victim's sister, as well as the victim's reputation for aggression (see assignment number eight) so as to convince the jury that he shot at Ledell Harrison, and killed him, as a reasonable response to his own fear of being gravely injured or killed by Harrison.
Under our statutes and jurisprudence, such evidence is not admissible until defendant has made a showing with appreciable evidence that the victim made a hostile demonstration or overt act against him at the time of the incident which would have manifested to a reasonable person that he was in danger of grave bodily harm or of being killed. La.R.S. 15:482; State v. King, 347 So.2d 1108 (La.1977); State v. James, 339 So.2d 741 (La.1976); State v. Lee, 331 So.2d 455 (La.1976). Once that showing has been made, then the evidence can be brought to the attention of the jury which can then serve as fact-finder and believe or disbelieve any or all of this evidence. Although the trial judge may not usurp the jury's function by choosing to disbelieve defendant's evidence of hostile demonstration or overt act, and thereby disallow evidence which should have gone to the jury, of the victim's reputation or violent nature, see State v. King, supra, State v. Green, 335 So.2d 430 (La.1976), and State v. Lee, supra, the judge must determine whether any evidence shows that decedent was the aggressor in the conflict and that defendant honestly acted in self-defense. See State v. James, supra; United States v. McIntire, 461 F.2d 1092 (5th Cir. 1972); Black v. State, 230 Ga. 614, 198 S.E.2d 314 (1973); Chacon v. People, 175 Colo. 437, 488 P.2d 56 (1971); Allen v. State, 38 Fla. 44, 20 So. 807 (1896); 1 A.L.R.3d 571 (1965).
The record before us contains no evidence tending to show that at the time in question defendant would have been in any danger had he not precipitated the incident by approaching the foursome and pointing a loaded gun at them. Self-defense is relative. It is available as an exculpation, or an excuse for assault, to an assaultee, not an assailant. And the time frame for assessing or characterizing the combatants commences at incipience of the confrontation. In a situation like the present, where a party searches for another, finds him, approaches with a loaded and pointed pistol (a menacing rather than indifferent act in light of the apparent bad blood existing between the parties), it is incongruous to label as self-defense a shooting by the assailant even if such shooting were to follow the victim's reaching for a pistol (a fact probably not shown by the evidence here but assumed for the purpose of argument). Self-defense in such a circumstance may be urged (and might have been, had the decedent rather than the defendant prevailed in the conflict) by the victim of the initial assault, not by the assailant. In a civilized society the law cannot permit even a harassed and threatened individual to take the law into his own hands, track down his enemy, assault him with a pistol, and then claim justification for a homicide which follows, because of prior threats.
For these reasons defendant here may not invoke R.S. 15:482 and attempt to prove *1117 the victim's reputation for violence or prior threats even if he is able to show the victim's overt act at the time of this type of confrontation. The assignment lacks merit.
ASSIGNMENT OF ERROR NO. 8.
The immediately preceding assignments of error had to do with defendant's efforts to prove prior threats. This assignment, number eight, has to do with efforts to prove the reputation of the victim, Ledell Harrison. It arose when the court refused to allow defendant to question one Donald Ray Gaines about whether or not he had ever heard Ledell Harrison's reputation for violence discussed in the East Baton Rouge Parish jail where both the witness and the decedent had spent some time together. For the same reasons which we related hereinabove as to the assignments relating to prior threats, evidence of decedent's dangerous character was properly disallowed in this case.
ASSIGNMENT OF ERROR NO. 11.
Defendant complains that the trial court erred in allowing the state to introduce the testimony of Officer E. Altazin to impeach defendant's testimony. When he took the stand, defendant described the stabbing of his girl friend Sandra Collins by Georgia Mae Harrison which occurred about a week before the fatal shooting for which he was on trial, and was one of the incidents which precipitated the homicide. He testified that when he took her to the hospital he was questioned by police but that he made no statement. He was asked if he had occasion to speak with Officer Dan Altazin that night; if he spoke with any police officers that night; whether he told anyone what he was going to do to "Pie." He insisted that he made no statement. On rebuttal, the state introduced the testimony of Officer Altazin who stated that at the hospital defendant Brent said that Pie Gangster and an unknown subject by the name of Slim "had signed their death warrants." "Gangster Pie" is, as previously stated, a nickname used by Georgia Harrison decedent's sister.
Defendant argues that the statement was improperly admitted because it was an inculpatory statement introduced absent prior notice and, alternatively, because it was incompetent as impeachment being a "collateral fact or irrelevant matter." La.R.S. 15:494.
Article 768 of the Code of Criminal Procedure provides that, should the state fail to give notice of its intention to use a confession or inculpatory statement at trial, it is inadmissible. For purposes of this article, the term "inculpatory statement" refers to defendant's out-of-court admission made after a crime has taken place which implicates defendant in its commission. State v. Brumfield, 329 So.2d 181 (La.1976); State v. Wells, 306 So.2d 695 (La.1975). Because defendant made the challenged statement one week before the crime took place, Article 768 does not govern its admission into evidence.
Defendant, however, also argues that the statement was improperly elicited in an attempt to impeach his credibility as a witness because the statement raised an issue collateral to his guilt of the crime charged.
Louisiana Revised Statute 15:493 and 494 allow impeachment of a witness' credibility by use of prior inconsistent statements, but they require that a proper foundation be laid before impeachment and they disallow impeachment "as to collateral facts or irrelevant matter."
There can be no question here but that the state laid a proper foundation because the prosecutor supplied the witness with the date of the statement, the occasion, the place, the name of the person to whom it was given, and a reference to the substance of the statement. Additionally, the statement was relevant to a material issue in the case. At the time of the shooting of Ledell Harrison, he was walking with his sister, Georgia Mae Harrison. When defendant Brent shot and killed Ledell Harrison he also fired several bullets which wounded, but did not kill, Georgia Mae Harrison. Therefore, defendant's threat to kill her, *1118 made to a police officer one week before, was relevant to defendant's guilt of the crime for which he was being tried, the murder of Ledell Harrison.
The assignment lacks merit.
ASSIGNMENT OF ERROR NO. 12.
Originally, defendant was indicted for first degree murder. Thereafter the state amended the grand jury indictment to charge him with second degree murder. Defendant argues that this action on the part of the state improperly curtailed his right to a preliminary hearing.
When a criminal defendant feels that he has a right to a preliminary hearing, he should assert that right before trial by means of an application for supervisory writs to this Court. On appeal after conviction he can no longer allege that he was improperly denied a preliminary hearing.
This assignment lacks merit.
For the reasons assigned, the conviction and sentence of defendant Brent are affirmed.
DENNIS, J., concurs.
NOTES
[1] One assignment, number seven, was not argued in brief and will be deemed abandoned. State v. Jones, 340 So.2d 563 (La.1976). In any event the assignment is non-meritorious. Defendant complains in his formal assignment that the state improperly cross-examined the defendant who took the stand, by asking him if he had ever been convicted of a crime. Such an inquiry is proper. La.R.S. 15:495
[2] Assignment of error number three arises out of the trial court's refusal to allow defendant to cross-examine a state witness, Georgia Harrison, for the purpose of proving that that witness, along with the decedent, had made threats against the life of the defendant prior to the commission of the offense. Assignment of error number four arose out of the court's refusal to allow defense counsel to elicit from the defendant a statement made to him by defendant's sister shortly before the occurrence of the offense. Defendant's sister had apparently told the defendant that decedent and his companions had gone to defendant's house and threatened to kill him.

Assignment of error number five arose out of the trial court's refusal to allow counsel to elicit from the defendant testimony to the effect that several days before the alleged offense the defendant was told by a third party that the decedent and his companions were searching for the defendant, were armed, and intended to kill the defendant. Assignment of error number six arose out of the court's refusal to allow defendant to testify that Nelson Perkins had told him shortly before the commission of the offense that the decedent and his companions had threatened to kill the defendant, were searching for him, and were armed.
Assignment of error number nine arose out of the court's refusal to allow defendant to call to the stand Nelson Perkins and attempt to elicit from him testimony concerning a threat made by the decedent upon the life of the defendant and communicated by that witness to the defendant. Assignment of error number ten arose out of the court's refusal to allow defendant to call as a witness his sister, Sherl Palmer, and ask her to describe threats made to him and to other members of their family shortly before the offense.