408 So.2d 1285 (1982)
STATE of Louisiana,
v.
Leroy E. JONES and Wilhemina Joseph.
No. 81-KA-1607.
Supreme Court of Louisiana.
January 25, 1982.
*1288 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Tom Chester, David Paddison, Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellee.
John M. Lawrence, Orleans Indigent Defender Program, Frank G. DeSalvo, New Orleans, for defendant-appellant.
FRED W. JONES, Jr., Justice Ad Hoc.[*]
Leroy E. Jones and Wilhemina Joseph were jointly indicted on two counts of aggravated kidnapping (La.R.S. 14:44), two counts of armed robbery (La.R.S. 14:64), and one count of aggravated rape (La.R.S. 14:42). Joseph was also charged with one count of aggravated crime against nature (La.R.S. 14:89.1).
The state severed some of the counts and proceeded to jointly try the defendants before a jury on the two counts of armed robbery and the one count of aggravated rape. The defendants were found guilty as charged on each count of armed robbery. On the rape charge the jury returned a responsive verdict of guilty of forcible rape.
The trial judge sentenced each defendant to serve 50 years imprisonment at hard labor on each of the armed robbery counts and to 40 years imprisonment at hard labor on the forcible rape count, with the sentences to run concurrently.
The state filed multiple offender charges under La.R.S. 15:529.1 against both defendants. Jones' motion to quash the multiple offender bill against him was granted. Upon being adjudged a third felony offender, Joseph's original sentence was ordered vacated and she was sentenced to be imprisoned at hard labor for 50 years.
Both defendants appealed, with Jones urging 22 assignments of error (3 of which were abandoned) and Joseph urging 18 assignments of error.
According to the record, at about 1:30 A.M. on March 30, 1980, a young white female and her date returned to their automobile after buying doughnuts at Picou's Bakery in New Orleans. The young lady took her seat in the car. Her male friend started around to the driver's side of the vehicle when he was confronted by a black male holding a small silver pistol (later discovered to be a toy gun) and a black female brandishing a knife. Upon demand, the car keys were relinquished to the black male, who occupied the driver's seat while his *1289 companion forced the white male into the back seat with her and who then drove the vehicle off.
During the course of riding around for some 15 minutes the abductors threatened their victims, took the white male's wallet and chain with a cross, and the white female's cash and jewelry. The male victim was then released and he promptly notified the police of the abduction.
The two abductors proceeded with their female victim to another location, where she was commanded to remove her clothing and get into the back seat of the car. She was then raped by the male abductor while the female helped hold her down. Thereafter the female victim was released. Later that night the police found her, weeping and with disheveled clothing.
As the result of a police investigation the victims viewed a photographic lineup during which they identified the defendants as their abductors. On April 21, 1980 the defendants were arrested pursuant to the issuance of arrest warrants. A few days later the victim observed the defendants at a physical lineup and again identified them.

Assignments of Error Nos. 1 & 2Jones

Assignments of Error Nos. 1, 2 & 15Joseph
These assignments involve defendants' contentions that the trial judge erred in denying their motions for severance of offenses and severance of defendants.
Joinder of Offenses
Defendant Jones argues that he was prejudiced by joinder of the armed robbery charges with the rape charge because of the dissimilar nature of the crimes and because the overwhelming evidence supported the armed robbery charges as opposed to the rape charge.
In addition, defendant Joseph contended that she was prejudiced by joinder of the offenses because the jury could easily believe she was a principal to the rape charge after hearing the persuasive evidence relating to the armed robbery charges.
As pointed out in State v. Washington, 386 So.2d 1368 (La.1980), La.C.Cr.P. Art. 495.1[1] was amended in 1978 to adopt the federal rule on severance of offenses. There now must be a clear showing of prejudice before the trial judge's ruling on this question will be disturbed.
In Drew v. United States, 331 F.2d 85 (D.C.Cir.1964), it was observed that any prejudice flowing from the introduction of "other crimes evidence" would not be enlarged by the mere fact of joinder where the "other crimes evidence" would have been admissible in separate trials. That is precisely the case here. The armed robberies of the two victims and the rape of the female victim a few minutes later constituted one continuous transaction, with each offense forming part of the res gestae. As noted in State v. Haarala, 398 So.2d 1093 (La.1981):
"The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed."
Here, evidence of each "other crime" would have been admissible in separate trials of each offense since the state could not have accurately presented its case without reference to the other crimes. For this reason, we do not find that the trial judge's denial of the motion to sever the armed robbery and aggravated rape counts amounted to an abuse of his discretion.
Joinder of Parties
Defendant Jones argues that he was prejudiced by the trial judge's denial of the motion to sever the trials of the two *1290 defendants because their defenses were antagonistic. Defendant Joseph contended that she was prejudiced by denial of her motion to sever the trial because she was prevented from calling her co-defendant as a witness to exculpate her.
It is well settled that a mere allegation of antagonistic defenses, without evidence offered at a hearing to substantiate the claim, does not discharge the defendant's burden of showing that he will be prejudiced by a joint trial. State v. Whitt, 404 So.2d 254 (La.1981); State v. Singleton, 352 So.2d 191 (La.1977). Further, we do not glean from the trial record any indication of antagonistic defenses. Defendant Jones elected not to testify. Defendant Joseph simply denied any knowledge of the offenses.
Severance need not be granted merely because a defendant expresses a desire to call his co-defendant as a witness. The conducting of separate trials would not compel that co-defendant to waive his constitutional right against self-incrimination. State v. Jenkins, 340 So.2d 157 (La.1976).

Assignment of Error No. 3Jones

Assignment of Error No. 3Joseph
Defendants claim the trial judge erred in failing to sustain their objections to the state's use of peremptory challenges to exclude blacks from serving on the jury panel.
A defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks from jury service unless the record affirmatively establishes a systematic exclusion of blacks by the prosecution over a period of time. Only after the defendant has made a prima facie showing of such exclusion does the state have the burden of showing the absence of such discrimination. State v. Brown, 371 So.2d 751 (La.1979).
Since the defendants in this case made no effort to demonstrate a historical pattern of exclusion of blacks from jury service by the prosecution, the trial judge correctly overruled the objection to the state's use of its peremptory challenges.
These assignments lack merit.

Assignment of Error No. 4Jones
During his voir dire examination prospective juror Herdliska stated that he was engaged in civil litigation which he considered ludicrous and that he had little respect for the judicial system. The state challenged Herdliska for cause and was joined in the challenge by defendant Jones. Refusal of the trial judge to sustain this challenge is the basis for this assignment. The state subsequently withdrew its challenge.
Herdliska did not serve on the jury, apparently having been peremptorily challenged by one of the defendants. Assuming that this peremptory challenge was exercised on behalf of the defendant Jones, the record does not show that he exhausted his peremptory challenges before completion of the jury panel. In a joint trial of this nature, the peremptory challenges of one defendant cannot said to be exhausted as long as any such challenges are left to either defendant. State v. Forbes, 348 So.2d 983 (La.1977). Therefore, Jones cannot complain of the ruling on his challenge for cause. La.C.Cr.P. Art. 800. Be that as it may, Herdliska indicated that his jaundiced view of the judicial system would not interfere with his being a fair and impartial juror in this criminal case. The trial judge did not err in overruling this challenge for cause.
This assignment is without merit.

Assignment of Error No. 5Jones

Assignment of Error No. 5Joseph
In her voir dire examination, upon learning that the penalty for conviction of aggravated rape carried a mandatory life imprisonment sentence without benefit of *1291 parole, probation or suspension of sentence, prospective juror Pricilla Carter stated: "I disagree with it." The following colloquy then occurred between her and the trial judge:
"THE COURT:
Are you saying that you would be unable to return that verdict in this case knowing that your verdict would carry with it a life sentence?
A. Yes.
THE COURT:
Now, are you saying that under no circumstances could you return that verdict?
A. I think that I would consider the fact that if the person was going to receive that sentence, that that would be a factor.
THE COURT:
Let me say this in regard to that. It should be a factor. Any of these verdicts should be well reasoned and well thought out and based on the law and evidence in this case before they should be returned, and while it is a mandatory sentence, the function of a juror is primarily to ferret out the guilt or innocence of the defendant's, but it is a fact that if the jury would return that verdict, it would be a life sentence.
Now my question, again is, if the law and the evidence would show that the defendants were guilty of that crime, would you return a verdict of guilty of aggravated rape knowing that it would carry with it a potential life sentence?
A. No, I could not.
THE COURT:
You could not. And that would be no matter what the evidence would show?
A. Right."
The state's challenge for cause of this prospective juror was sustained. Defendants' complaint with reference to this ruling is the basis for these assignments.
Since the record indicates that the state only exercised 14 of its 24 peremptory challenges, the result of the trial judge's ruling on this challenge for cause (even if erroneous) did not grant the state more peremptory challenges than entitled to by law. Therefore, defendants have no ground for complaint. La.C.Cr.P. Art. 800.
However, we note that this prospective juror's clearly expressed determination not to find the defendants guilty of the charge of aggravated rape, regardless of facts presented at the trial, because of the mandatory penalty, obviously disqualified her for this jury service. La.C.Cr.P. Art. 797; State v. Brent, 347 So.2d 1112 (La.1977). The trial judge properly sustained the challenge for cause.
These assignments lack merit.

Assignments of Error Nos. 6 & 10Jones

Assignment of Error No. 8Joseph
Among his pretrial motions Jones filed a Motion to Suppress Confession which was ultimately withdrawn when the state stipulated it would not attempt to introduce Jones' confession at trial. However, at the trial, when the state expressed an intention to offer in evidence certain items of jewelry taken from the victims by defendants and recovered as a result of information given by Jones in his confession, defendant Jones objectedcontending that these stolen articles were the fruit of a confession which the state had agreed not to use. The trial judge then ordered a hearing, outside the presence of the jury, to give the state an opportunity to discharge its burden of showing that the confession was given freely and voluntarily after the defendant was properly advised of his Miranda rights. Defendant Jones moved for a recess of a week or two in order to prepare for the hearing. The trial judge granted him a recess of about one and one-half hours. The argument that this was insufficient time to prepare for the hearing is the ground for these assignments.
Although counsel for Jones argued that he had not prepared for a suppression hearing *1292 because of the state's stipulation, the factual and legal basis for his assertion that the confession was inadmissible should have been known to him at the time he prepared the motion to suppress the confessionwell in advance of the trial. Furthermore, the trial judge offered his assistance in procuring any documents or medical records desired by counsel for use at the hearing.
Defense counsel conducted no cross-examination at the suppression hearing and did not put defendant Jones on the stand to rebut the testimony of the police officers concerning the voluntary nature of the confession.
Although the confession was not offered by the state at the trial, the items allegedly taken by defendants from the victims were received in evidence.
Defendants have shown no prejudice resulting from the action of the trial judge in granting a recess of one and one half hours rather than a week or two.
These assignments are without merit.

Assignment of Error No. 7Jones

Assignment of Error No. 6Joseph
Defendants contend the trial judge committed error in permitting Dr. John Kokemar, qualified by the state as an expert in the field of internal medicine and the examination of rape victims, to testify as to the female victim's emotional state outside the area of his expertise.
Dr. Kokemar stated that the victim was "shaking and crying." The witness merely described to the jury what he had observed which could have been done by any lay witness.
There is no substance to these assignments.

Assignment of Error No. 11Jones

Assignment of Error No. 9Joseph
These assignments involve a contention by defendants that the warrants for their arrest were illegal because based upon inadequate and invalid affidavits. Consequently, they argue that the arrest warrants should have been quashed and all evidence gained by the police as a result of those arrests, including their identification and the items stolen from the victims, should have been suppressed (as "fruits of the poisonous tree").
La.C.Cr.P. Art. 202 provides for the issuance of a warrant of arrest by a magistrate when (1) the person making the complaint executes an affidavit specifying, to the best of his knowledge and belief, the nature, date and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and (2) the magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
Discussing probable cause to arrest in State v. Collins, 378 So.2d 928 (La.1980), this court commented:
"One of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime...."
In this case the affidavits supporting the arrest warrants describe in detail the crimes committed on March 30, 1980 and further state that photographs of the defendants were identified by the victims as perpetrators of the offenses. The facts set forth in those affidavits established probable cause for the magistrate to believe that these defendants committed the crimes described therein. Therefore, the arrest warrants were legal and valid, and evidence recovered as a result of these arrests was admissible at the trial.
These assignments are without merit.

*1293 Assignment of Error No. 13Jones

Assignment of Error No. 10Joseph
During the presentation of the state's case Detective Hoogerswerf was asked by the prosecution if, during the course of his investigation of the rape, he developed a suspect. Over defendants' objections the officer replied: "Wilhemina Joseph and Leroy Jones. Two suspects." In these assignments defendants argue that the detective's answer was opinion testimony given in violation of La.R.S. 15:463.[2]
Detective Hoogerswerf was stating a fact known to him and not an opinion. This testimony was offered to explain why defendants' pictures appeared in the photographic lineups exhibited to the victims.
There is no merit to these assignments.

Assignment of Error No. 11Joseph
The female victim reported to the police that among the items taken from her by defendants was a pair of gold earrings. At the trial Detective Hoogerswerf was asked if he showed to the female victim a pair of earrings (which had previously been admitted into evidence). Defendant's objection to this testimony on the ground of relevance was overruled, and that ruling forms the basis for this exception.
When asked if the earrings received in evidence were those stolen from her by the defendants, the female victim replied: "No, but they look very much like that." Any error committed by the trial judge in his ruling was harmless.
This assignment lacks merit.

Assignment of Error No. 16Jones
During a trial recess one juror approached the judge with a question. Immediately thereafter, outside the presence of the jury, the trial judge informed the prosecutor and attorneys for the defendants that the juror asked him whether the crimes in question occurred in the vicinity of Dorgenois and North Broad Streets. The judge explained that he had declined to answer the question.
The trial judge denied defendants' motion to voir dire the juror. Defendant Jones contends that this action constituted reversible error.
Defendant does not argue that the inquisitive juror should have been replaced because he was unable to perform or was disqualified from performing his duties. La.C.Cr.P. Art. 789. Further, there is no allegation that the juror answered untruthfully any questions posed to him on his voir dire examination prior to selection as a juror. State v. Rounsavall, 337 So.2d 190 (La. 1976).
There is no merit to this assignment.

Assignments of Error Nos. 17 & 18Jones

Assignment of Error No. 13Joseph
Prior to trial defendant Joseph filed a Motion for Oyer requesting, among other things:
"3. Disclosure of the existence of any oral statements, admissions and/or confessions of any nature made by the defendant which the state intends to offer in evidence at trial including res gestae statements."
In its answer to this specific request, the state replied:
"3. None known at this time.
"3. Not applicable."
During the trial the male victim was asked with reference to defendant Joseph: "What did she say to you?" His answer: "She said that she had robbed before and that she'd killed before and she'd kill us."
*1294 The following colloquy occurred between the trial judge and attorneys for the defendants:
"MR. DE SALVO:
I'd like to renew my previously filed motion for a severance, Your Honor.
THE COURT:
It's again denied.
MR. LAWRENCE:
Your Honor, I'd like to make a motion for a mistrial based on the comments of the witness.
THE COURT:
Denied.
MR. DE SALVO:
Note my objection.
MR. LAWRENCE:
Note my objection, Your Honor."
Contrary to the state's argument, the defendants were entitled to discover the existence, if not the contents, of the res gestae statement under La.C.Cr.P. Art. 716(B). However, by failing to state the specific grounds for their objections and giving the trial judge an opportunity to rule thereupon, the defendants have presented nothing for post-conviction review. La.C.Cr.P. Art. 841. State v. Baylis, 388 So.2d 713 (La. 1980).
Had defendants articulated the basis for their asserted rights (inadequate response to discovery motion) the trial judge could have granted one of the remedies provided for by La.C.Cr.P. Art. 729.5 for failure to comply with the discovery rules. By failing to do so, they have effectively waived any right to be afforded relief on appeal. State v. Bonanno, 373 So.2d 1284 (La.1979).
These assignments lack merit.

Assignment of Error No. 22Jones
Defendant Jones contends the trial judge erred in refusing to allow him to take the stand and testify only with reference to the rape charge.
When a witness has been sworn and testifies to any single fact on his examination in chief, he may be cross-examined upon the whole case. La.R.S. 15:280. When an accused elects to become a witness, he is subject to all of the rules that apply to other witnesses and may be cross-examined on the whole case. La.R.S. 15:462. State v. George, 346 So.2d 694 (La.1977).
There is no validity to this assignment.

Assignment of Error No. 17Joseph
Defendant Joseph argues that the trial judge erred in denying her motion for a new trial based upon the contention that there was insufficient evidence to establish beyond a reasonable doubt that she was armed with a dangerous weapon. Cited as authority for this position is Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The victims testified that they were forced into their car and robbed by the defendants, one of whom was armed with a small silver pistol and the other with a four-inch knife. The pistol (discovered to be a toy) was found under defendant Jones' mattress.
Viewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence to convince a rational fact-finder beyond a reasonable doubt that defendants robbed their victims while armed with dangerous weapons.
This assignment lacks merit.

Assignment of Error No. 18Joseph
Defendant Joseph contends that the trial judge erred in adjudging her a third felony offender because (1) the two federal convictions upon which the state relied were not felonies under Louisiana law and (2) the authenticity of the previous convictions was not properly established at the multiple offender hearing.
At the multiple offender hearing Dennis Donnell, a former assistant U.S. Attorney, testified that on June 8, 1977, defendant *1295 Joseph pleaded guilty in Federal District Court to possession of the contents of stolen mail (a Family Services check in the amount of $140) in violation of 18 U.S.C. § 1708[3] and was placed on supervised probation. Also at the hearing, James Wright, another former assistant U.S. Attorney, testified that on July 10, 1979, defendant Joseph pleaded guilty in Federal District Court to one count of possession of the contents of stolen mail (a Family Services check in the amount of $153.40), and was given a three year suspended sentence and placed on supervised probation for five years.
A felony under federal law is any crime punishable by death or imprisonment for more than one year. 18 U.S.C. Sec. 1.
Since in each instance the stolen check which Joseph had in her possession was in an amount in excess of $100, it seems clear that the offense would have been a felony under Louisiana law. La.R.S. 14:69; La. R.S. 15:529.1(A). See LaFave & Scott, Handbook on Criminal Law (1972), pg. 635.
As to the authenticity of the evidence presented at the hearing, each of the former government prosecutors identified defendant Joseph as the individual who had been convicted in federal court of the two crimes. Certified copies of documents proving the convictions were received in evidence. The trial judge properly adjudged defendant Joseph a third felony offender.
This assignment is without merit.
Decree
For the reasons set forth, the convictions and sentences of defendants are affirmed.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
The partial quotation from Drew v. United States, 331 F.2d 85 (D.C.Cir.1964), does not purport to be a complete or correct statement of our other crimes or severance rules. Further, proof of a historical pattern is not the only way a defendant may establish a prima facie case of racial discrimination under our Constitution.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, John C. Boutall, Court of Appeal, Fourth Circuit, and Fred W. Jones, Jr., Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.
[1] Art. 495.1

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
[2] Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.
[3] 18 U.S.C. § 1708 provides in pertinent part:

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or any article or thing contained therein; or
Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for our collection upon or adjacent to a collection box or other authorized depository of mail matter; or
Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted
Shall be fined not more than $2,000 or imprisoned not more than five years, or both.