PITMAN, J.
| defendant, Gary Anthony Bailey, Jr., was found guilty by a jury of simple bur *742 glary, a violation of La. R.S. 14:62. A presentence investigation was ordered and Defendant was sentenced to serve ten years at hard labor with credit for time served. This appeal followed. For the following reasons, Defendant’s conviction and sentence are affirmed.
FACTS
Defendant was charged by bill of information with the September 23, 2011 simple burglary of a vacant mobile home owned by David Horton (“Horton”), located in Pecan Valley Mobile Home Park on Barks-dale Boulevard in Bossier City. There were two eyewitnesses to the crime and Defendant was apprehended in a nearby field by K-9 search shortly after the incident.
At trial, Tracy Bailey (“Tracy”) (no relation to Defendant) testified first on behalf of the state. Tracy and his girlfriend, Kristine Doss (“Kristine”), live in the mobile home park where the burglary took place and were coming home from a friend’s house shortly before midnight on September 23, 2011. Tracy testified that, as they drove into the park, he saw a person walking down the street and toward the vacant mobile home. He and Kristine watched the individual from their front porch. The individual was wearing dark pants or long shorts and a white tank top. Tracy watched the person trying to break the window air conditioning unit out of the front window of the mobile home. He testified that he heard glass breaking and saw the window unit fall into the mobile home. The person then climbed in through the window and, a few minutes later, exited the mobile home through the front door, carrying the window unit. Tracy maintained that the individual entered the mobile home through the window and that he could hear “shifting” while he was inside. According to Tracy, the person was not wearing a shirt when he came out of the mobile home. During this time, Tracy went into his |2mobile home to retrieve his phone to call the police. He came back outside and continued to watch the incident with Kristine.
Tracy further testified that the area close to the mobile home is dark, but there is a street light about 80 feet away. He testified that he saw the person apprehended by police that night. At trial, he positively identified Defendant as the person who stole the window unit.
On cross-examination, Tracy stated that he did not recall seeing any tattoos on the person who committed the burglary.
Kristine corroborated Tracy’s testimony, also positively identifying Defendant as the person she saw steal the window unit. Kristine testified that Defendant was stumbling down the street toward the vacant mobile home. She observed him “messing with” the window unit and she walked to the middle of the street in an attempt to distract him and let him know someone was watching him. Kristine testified that Defendant was unaffected by her presence and she returned to her front porch and told Tracy to call the police. Kristine testified that she saw Defendant push the window unit into the mobile home and crawl inside through the window. She heard a noise from inside the mobile home and then saw Defendant stumble out of the front door carrying the window unit. Kristine described | .-¡Defendant as wearing dark colored pants that were short or very long shorts. She also testified that she observed Defendant after he was arrested that night and she had “no doubt at all. I’m sure it was him.”
On cross-examination, Kristine testified that she saw a second individual, but did not see him interact with Defendant in any way. She also did not notice any tattoos on Defendant.
*743 Officer Justin Dunn of the Bossier Parish Sheriffs Office testified regarding the apprehension of Defendant. Officer Dunn was the K-9 handler who responded to the scene with his dog, Tigo. Officer Dunn gave a verbal warning that the dog was going to be released and waited for Defendant to surrender. After several seconds, Tigo was “put on the ground” and Tigo tracked Defendant through a hole in a fence and into a nearby pasture, where Defendant was lying on the ground. Tigo bit Defendant. Officer Dunn and his partner, Officer Eric Sproles, apprehended Defendant and returned with him to the mobile home park.
Tigo then tracked Defendant’s scent to a shed behind a mobile home in the park. Officer Dunn did not search the shed at that time, but made contact with Defendant’s mother, who owned the shed. Officer Dunn testified that Defendant’s mother advised him that Defendant stays in her shed when he is in town and that she signed a consent to search form for the shed. Officer Dunn gave the consent to search form to Sergeant Kenneth Johnson, also with the Bossier Parish Sheriffs Office.
Sgt. Johnson testified that he supervised the officers at the scene and the collecting of evidence. Sgt. Johnson stated that the window unit was |4found in the shed on Defendant’s mother’s property. Sgt. Johnson further testified that Horton was notified and that he spoke with Horton when he arrived at the scene. Horton identified the window unit as his since he recognized some plastic he had left on the cord of the unit.
During the investigation, Officer Sproles acted as Officer Dunn’s backup partner while Officer Dunn handled the K-9. Officer Sproles was the first to see the window unit in the shed following Defendant’s arrest. He testified that Defendant was wearing camouflage pants and no shirt when he was apprehended. Officer Sproles stated that Defendant had numerous tattoos on his arms and body.
Horton provided testimony regarding the window unit and the mobile home. He testified that the mobile home was vacant at the time of the burglary, but had been rented and was to be occupied in “a couple of days.” He had been in the mobile home earlier in the day getting it ready for occupancy and had left at approximately 2:00 p.m. Horton testified that, when he left the mobile home, he locked the deadbolt and the doorknob. When he entered the mobile home after the window unit was stolen, the deadbolt was unlocked, but the doorknob was locked. Horton explained that the deadbolt had a turn lock on the inside and a keyed lock on the outside. The doorknob was self-locking. If it was locked from the inside and the door was then closed, one would be locked out. He also testified that the refrigerator had been pulled out from the wall and turned slightly.
|¡;On cross-examination, Horton testified that there was broken glass around the window, but he did not find any blood around the window or in the mobile home.
The only witness for the defense at trial was Defendant. Defendant described his background and that he had an abusive, alcoholic father and “good old lady” mother. He grew up on Lake Bistineau and dropped out of high school. When asked what he did after high school, he answered, “I went to prison.” Defendant was 43 years old at the time of this offense and described his lengthy felony criminal history, which began when he was 17 years old. He testified that, in 2007, he was convicted of molestation of a juvenile and has a previous conviction for burglary of an inhabited dwelling and an attempted burglary.
*744 Regarding the current offense, Defendant admitted that he took the window unit and had the intent to steal it. He testified that he stays in his mother’s shed when he is in town because it bothers her when he drinks. He testified that he knew the former tenants had moved out and he had thought about stealing the window unit earlier in the day. Defendant started drinking in his mother’s shed and, after getting drunk, decided to steal it. While Defendant admitted he took the window unit, he adamantly denied going into the mobile home. He testified that he pushed up on the unit, which smashed the window, and he “ripped it out of the trailer” and “throwed it down in'’my momma’s shed.” While he was carrying it to the shed, Defendant noticed a person squatting down talking on a cell phone, but the person was not paying attention to him. According to Defendant, he |figot a feeling that something was not right. After being in the shed for a few minutes, he looked out of the shed and saw a patrol car. He left the window unit there and went through a fence and into a pasture where he passed out.
Defendant testified that it would make no sense for someone to go into the vacant mobile home to steal anything because it was empty. There was nothing to steal. He testified that he was treated at the hospital for the dog bites, but did not have any injuries from broken glass. Finally, he testified that he is “covered” in tattoos. ■
As previously stated, the jury found Defendant guilty as charged and he was sentenced to ten years at hard labor. The trial court ordered the sentence to run consecutively with any other sentence Defendant was currently serving or any sentence he will have to serve. Timely motions for post-verdict judgment of acquittal, new trial and for reconsideration of sentence were filed and denied. Defendant now appeals, urging 2 assignments of error through counsel with the Louisiana Appellate Project and 24 pro se assignments/arguments.
DISCUSSION
Counseled Assignment of Error Number 1: The evidence adduced at trial was insufficient to support a conviction of simple burglary.
Pro se Assignments of Error Numbers 2, 3, 8 and Ip. Challenges to sufficiency of evidence.
Defendant argues that the state failed to meet its burden of proving the element of entry; therefore, the evidence was insufficient to sustain the conviction.
|7The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297.
Defendant was charged with and found guilty of simple burglary, defined in La. R.S. 14:62 as the unauthorized entering of any dwelling, vehicle, water craft, or other structure, movable or immovable, or any *745 cemetery, with the intent to commit a felony or any theft therein, other than as set forth in La. R.S. 14:60. Noting that “entry” is not statutorily defined in Louisiana, the supreme court has expressly adopted “the universal definition given to the term ‘entry,’ ” and has held as a matter of law that an “entry” for purposes of the crime of burglary occurs when any part of the intruder’s person crosses the plane of the threshold. State v. Bryant, 12-233 (La.10/16/12), 101 So.3d 429.
|gWhen viewed in the light most favorable to the prosecution, the evidence presented at trial was sufficient to convict Defendant of simple burglary. The only element challenged by Defendant is “entry.” Two eyewitnesses testified that they watched a person, whom they both identified as Defendant, push the window unit into the mobile home, crawl through the window and exit through the front door carrying the window unit. The jury chose to credit this direct evidence over the testimony of Defendant.
Defendant further argues that he sustained no lacerations from broken glass and suggests that the window was too high off the ground for him to crawl through. The state points out that the window unit rests on the window sill with the glass portion of the window raised and resting on the top of the unit. It is completely reasonable that Defendant crawled over the window sill and into the mobile home without being cut by glass. In addition, the design of the locks as described by Horton supports the theory that Defendant turned the deadbolt to unlock it from the inside; and, once outside, when he closed the door, the self-locking doorknob locked. This explains why the deadbolt was unlocked, but the doorknob was locked when Horton exited the mobile home after the burglary.
There is sufficient evidence on which the jury could have based a finding that Defendant entered the mobile home and is guilty of simple burglary. The assignments of error addressing the sufficiency of the evidence are without merit.
In his pro se brief, Defendant also attacks the credibility of Tracy and Kristine, suggesting that their testimony contains inconsistencies which |9dictate that their testimony be discredited. He also complains that he was improperly convicted based solely on circumstantial evidence. First, for the reasons previously expressed, the state presented sufficient evidence to support the finding that Defendant entered the mobile home. In addition, credibility determinations are within the province of the trier of fact and this Court does not reweigh evidence or assess credibility. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529. The jury chose to accept the testimony of Tracy and Kristine, the eyewitnesses, and to reject the testimony of Defendant. This court must accord deference to that determination and should not disturb the jury’s findings. Second, contrary to Defendant’s assertion, he was not convicted on circumstantial evidence. Rather, the conviction was based on the direct evidence of two eyewitnesses who observed him crawl through the window of the mobile home and exit through the front door.
The pro se assignments are also without merit.
Pro se Assignments of Error Numbers k-7, 21 and 22: Ineffective Assistance of Counsel
Defendant complains that his appointed trial counsel was ineffective and that *746 Pamela Smart of the Indigent Defender’s Office failed to provide him with effective counsel. He also complains that the Bossier Parish Clerk of Court, the assistant district attorneys and the public defender’s office were informed via carbon copies of his numerous letters to the trial court | mthat he was being denied effective counsel. Specifically, Defendant alleges that his counsel failed to subpoena witnesses he desired to call to testify and asserts that his trial counsel “sold him out” by revealing to the district attorney that he could not have crawled through the window because he did not have any cuts or lacerations.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal since the PCR process creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
There has been no showing that Defendant’s trial counsel was deficient. A review of the record reveals that Defendant’s appointed counsel made appropriate filings and advanced the interests of Defendant at each stage of the proceedings, including effective witness questioning and presentation of evidence. The evidence against Defendant was strong, including the testimony of two eyewitnesses, and his counsel made appropriate and vigorous argument to the jury on his behalf. Defendant has not specified any particular deficiency on the part of his trial counsel that would support a claim of ineffectiveness. Furthermore, any perceived |n deficiency certainly did not prejudice the defense or deprive Defendant of a fair trial.
These assignments are without merit.
Pro se Assignments of Error Numbers 9, 15 and 18: Defendant was denied complete discovery until after trial.
On September 27, 2011, Defendant’s appointed counsel filed a motion for discovery and production of documents. On April 12, 2012, Defendant filed a pro se motion for discovery under four different docket numbers, including the instant matter. On January 30, 2012, the trial judge denied the pro se motion as repetitive in the instant matter, noting that it had previously granted counsel’s motion and the state had complied therewith on November 15, 2011. On February 29, 2012, Defendant filed a pro se motion to produce, requesting all “photos pertaining to his case” and all “medical records pertaining to his case.” On March 21, 2012, Defendant filed a pro se motion for production of documents requesting “all pre-trial motions filed.” The trial court again denied the motions as repetitive and ordered Defendant to obtain the requested material from his court-appointed counsel.
Defendant was convicted on May 22, 2012, and remanded for sentencing on August 14, 2012. On June 13, 2012, after his trial and conviction, Defendant filed a pro se motion for production of documents seeking a copy of his “bill of information, bill of particular, photo copies of evidence, indictment, copies of pretrial hearing, police investigation reports, police report, court minutes.” The motion was again denied as repetitive and Defendant was again advised to obtain the information from his court-jappointed12 counsel. Defendant was further advised that, after sen *747 tencing, he would be entitled to one free copy of his guilty plea colloquy, bill of information, criminal case minutes and documents committing him to custody in accordance with the law. Though technically not discovery, Defendant requested by letter and motions copies of court transcripts, each of which were appropriately addressed by the trial judge and/or law clerk.
Throughout his pro se brief, Defendant argues that his counsel failed to provide him with the information he continually sought through the above-described motions.
There is nothing in the record before this Court that supports the argument that Defendant was denied discovery. The record contains several rulings of the trial court noting that the state complied with discovery and advising Defendant to obtain the information from his counsel. Defendant makes the bare allegation that counsel would not provide the discovery to him, but there is no support for this assertion in the record. Defendant acquiesced in counsel’s representation of him pretrial and through sentencing.
These assignments are without merit.
Pro se Assignments of Error Numbers 1 and 16: The “arrest affidavit” and Bill of Information were defective.
Defendant argues that the arrest affidavit was not reviewed within 48 hours. Defendant attached the Arrest Report of the Bossier Parish Sheriffs Office to his brief on appeal and complains that the affidavit portion of the report is not signed and dated by a judge. The report, however, is not part of the record on appeal and will not be considered.
| ^Defendant also argues that the Bill of Information was not signed by the district attorney and, therefore, is defective. The Bill of Information contained in the record at page 10 is in proper form and signed by an assistant district attorney.
These assignments are without merit.
Pro Se Assignment of Error Numbers 10, 11 and 12: Defendant was denied his right to a speedy trial, was denied a contradictory hearing on his Motion for Speedy Trial and was denied contradictory hearings on other motions.

Speedy Trial

Defendant argues that he was denied a contradictory hearing on his motion for speedy trial and that the denial of the motion was error.
For the noncapital felony with which Defendant was charged in the present case, the state was given two years from the institution of prosecution to commence trial. La. C. Cr. P. art. 578. Defendant’s arguments are meritless because the matter went to trial within two years of the institution of prosecution. In addition, there is no indication of error in the trial court’s handling of the motion and the denial thereof.

Denial of Other Contradictory Hearings

It is unclear from Defendant’s brief or from his other numerous filings exactly what he is complaining about in this assignment. It seems he believes he was entitled to contradictory hearings on various pretrial motions, which are not identified. Based on the argument of Defendant and the fact that there is no evidence in the record of a denial of any contradictory hearings, this court finds no error.
Accordingly, this assignment is without merit.
| uPro se Assignment of Error Number IS: There was no consent to search form signed by his mother granting permission to search the shed.
Defendant argues that his mother did not sign a consent to search form and that *748 the search of the shed was in violation of his constitutional right to be free from unreasonable search and seizure.
Officer Sproles testified that he spoke with Defendant’s mother and had her sign a consent to search form, which he then gave to Sgt. Johnson. Sgt. Johnson conducted the search. The alleged consent to search form was not introduced at trial and is not a part of the record.
Defendant failed to object during either officer’s testimony. If Defendant had not been provided the signed consent to search form by the state prior to trial, he failed to seek to have the same produced. Defendant cannot challenge the testimony of the officers regarding his mother’s consent to search for the first time after the jury’s verdict has been rendered. La. C. Cr. P. art. 841.
This assignment is without merit.
Pro se Assignments of Error Numbers 19, 20 and 2⅛: The procedure for the preliminary examination was improper and, therefore, Defendant was unprepared for the hearing; the trial court erred in denying Defendant’s motion in limine.
On March 8, 2012, Defendant filed a motion for preliminary hearing and a motion in limine, under several docket numbers, including the instant matter. The motion in limine sought to prohibit the “district attorney, Judge or any other from using [Defendant’s] criminal background against [him] to convict [him].” By ruling dated April 3, 2012, the trial judge set a contradictory hearing on the motions for May 15, 2012. There is no | ^transcript of a hearing on that date and the record contains no ruling on the motions.

Preliminary Examination

When a criminal defendant feels he has a right to a preliminary examination, he should assert that right before trial by means of an application for supervisory writs. On appeal after conviction, he can no longer allege that he was improperly denied a preliminary examination. State v. Brent, 347 So.2d 1112 (La.1977). Since Defendant was convicted, he may not claim that he was denied a preliminary examination. State v. Brent, supra.

Motion in Limine

Within a reasonable time before trial, the state must furnish a defendant with a statement in writing of the criminal acts or offenses it intends to offer in evidence specifying the exception to the general exclusionary rule upon which it relies for admissibility. State v. Prieur, 277 So.2d 126 (La.1973). Absent evidence that the state evaded Prieur notice requirements by deliberately reserving its other crimes evidence for cross-examination or rebuttal, the Prieur notice requirements do not apply where the defendant, through his own testimony, makes the other crimes evidence relevant. State v. Silguero, 608 So.2d 627, 630 (La.1992).
Defendant chose to testify on his own behalf. He testified freely on direct examination about his criminal history. Even if the evidence was elicited first by the state in cross-examination, the evidence was admissible hRfor impeachment purposes. La. C.E. arts. 404 and 609.1; State v. Prieur, supra.
These assignments are without merit.
Pro se Assignment of Error Number 23: Defendant’s “first appeal” was denied on false grounds.
Following his conviction, but before sentencing, Defendant filed a pro se motion for appeal. Citing La. C. Cr. P. art. 911, the trial court denied the motion as premature because Defendant had not yet been sentenced. Defendant argues that this denial was “a lie” and he should have been granted the appeal. This assignment is *749 moot, as the matter is currently on appeal. There is no error in the trial court’s ruling.
Accordingly, this assignment is without merit.
Counseled Assignment of Error Number 2: The sentence of ten years at hard labor is excessive under the facts and circumstances of this case.
Defendant argues that the trial court failed to tailor the sentence to him and this offense, instead basing a near-maximum sentence solely on his criminal history.
The trial court ordered a presentence investigation and thoroughly reviewed the report at sentencing. In addition, the trial judge was aware of and considered the testimony of Defendant regarding his personal and familial background. The judge also considered Defendant’s criminal history, which began as soon as he dropped out of high school. In 1986, Defendant pled guilty to simple burglary. A year later, his probation was revoked. In 1987, he pled guilty to felony property damage. In 1989, Defendant pled guilty to attempted burglary of a business in Bossier City |17and in 1993 to simple burglary of an inhabited dwelling in Red River Parish. Defendant was convicted of DWI in 2002 and pled guilty to molestation of a juvenile in 2004. At the time of sentencing in the instant matter, Defendant had a pending charge of failure to register as a sex offender. In addition, the presentence investigation report revealed a myriad of arrests and nol grossed charges. Since Defendant was a sixth felony offender, the trial judge found that the factors of La. C. Cr. P. art. 894.1 supported Defendant’s need of correctional treatment in a custodial environment to protect the citizens of Bossier Parish.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. As a general rule, maximum sentences are reserved for the worst kind of *750 offender. State v. Cozzetto, 07-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802.
The trial judge adequately considered the statutory factors in sentencing this sixth felony offender. The ten-year hard labor sentence is within the statutory range and is not a manifest abuse of the trial court’s vast sentencing discretion. Furthermore, the sentence is neither a purposeless infliction of pain and suffering, nor does it shock the sense of justice.
This assignment is without merit.
| ^CONCLUSION
For the reasons set forth above, the conviction and sentence of Defendant, Gary Anthony Bailey, Jr., are affirmed.
AFFIRMED.