420 So.2d 663 (1982)
STATE of Louisiana
v.
Nancy L. EDWARDS.
No. 81-KA-3084.
Supreme Court of Louisiana.
September 7, 1982.
Rehearings Denied November 5, 1982.
*667 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James M. Johnson, Randy D. Elkins, Asst. Dist. Attys., for plaintiff-appellee.
B. Woodrow Nesbitt, Jr., Settle & Nesbitt, Shreveport, for defendant-appellant.
WILLIAM NORRIS, III, Judge Ad Hoc.[*]
Defendant, Nancy L. Edwards was indicted for second degree murder in violation of La.R.S. 14:30.1 in connection with the death of her husband, Don Edwards. After trial by jury, defendant was found guilty of manslaughter by a verdict of 11 to 1 and sentenced to serve 10 years imprisonment at hard labor. It is from this conviction and the resulting sentence that defendant appeals.

FACTS
On November 11, 1980, at approximately 6:00 a.m., defendant while carrying a loaded.38 caliber pistol, forcibly entered the rear entrance of the residence of Mrs. Audlee Outz, located in Minden, Louisiana, where she found her husband completely nude and Mrs. Outz clad only in black panties in the bedroom. Thereafter, she fired her pistol five times striking Mr. Edwards four times inflicting wounds which resulted in his death after which she called the police. When the officers arrived they found Mr. Edwards' body on the bedroom floor close to the doorway leading into the kitchen, Mrs. Outz intoxicated in her state of undress and Mrs. Edwards.
Prior to the shooting, defendant and her husband had a violent confrontation at their family home in Dubberly shortly after midnight. According to Mrs. Edwards' testimony, her intoxicated husband had physically abused her and threatened to beat their eight year old daughter to death. Mrs. Edwards testified that after her husband threatened the child, he "jumped up and started toward her." Mrs. Edwards then grabbed a crowbar, struck him on the head as hard as she could, and fled with her child to a neighbor's home where she called the police to inform them of the incident. Thereafter, Mr. Edwards went to the hospital for treatment and several hours later to the Webster Parish Courthouse where Mr. and Mrs. Edwards confronted each other in the parking lot. It was there that Mrs. Edwards retrieved her car, returned home to unlock the door so Mr. Edwards would not break it down, and left. Mr. Edwards later returned home with a deputy sheriff, got his truck and left.
*668 Mrs. Edwards was afraid to return home so she went to the home of her paramour, Melvin Reeves, where she engaged in sexual relations with him before she left to go to work at approximately 5:30 a.m. On her way to work she attempted to determine her husband's whereabouts. Failing to see his truck at a truck stop he frequented, she drove by Mrs. Outz's residence, a place he had gone on a prior occasion, where she saw his truck parked. She then pulled into the driveway, picked up the gun which she always carried with her, and proceeded to knock on the front door. Receiving no answer and finding the door locked, she walked around the side of the house and passed a bedroom window where she heard her husband and Mrs. Outz "making love." She then proceeded to the rear door, knocked, found it locked, pushed a hole in the screen to open its latch, and leaned against the main door forcing it open.
After entering the house, she went through the back bedroom and the kitchen into the bedroom where she found her husband and Mrs. Outz. Mrs. Edwards turned on the bedroom light with the hand in which she held the gun.
According to the testimony of Mrs. Edwards, Mrs. Outz came toward her, turned to the right and went into the hallway toward the bathroom. Mrs. Edwards saw her husband sitting on the side of one of the two beds in the room and told him, without pointing the gun at him, that she knew he would be there. At that point, Mr. Edwards sprang from the bed saying "you G__d___ son-of-a-bitch, I told you I'd kill you if you come (sic) here again," coming toward her with his hands up in a threatening manner. She then started to run, hit a door or doorframe, and was unable to retreat. When she saw her husband almost upon her, she shot to keep Mr. Edwards from killing her.
After the shooting, Mrs. Edwards laid her gun on the bed and called the police from the bedroom phone to report the shooting.
The only other witness to the shooting was Mrs. Outz, who had been drinking heavily for a prolonged period prior to the shooting with Mrs. Maggie Townsend.[1] While admittedly she was "pretty high" at the time of the shooting, she recalls Mr. Edwards' calling to tell her he was coming over but she could not recall what time he called, when he arrived or which bed she was on at the time of the shooting. She testified that she did not see Mrs. Edwards until the first shot was fired. At one point, she indicated she was sitting on the bed but later testified that she was awakened by the first shot. She further stated that she heard no talk prior to the shooting and that Mrs. Edwards had fired five shots from the kitchen while Mr. Edwards was standing. She also testified that the deceased only fell forward with "his brains blowed out" after the five shots were fired and that he was never within two feet of Mrs. Edwards during the shooting. She further testified that Mrs. Edwards never entered the bedroom but used the phone in the front room to call the police. Nothing was moved in the bedroom before the arrival of the police.
Three law enforcement personnel who arrived at the scene minutes after the shooting[2] testified that defendant met them at the door of the Outz residence and informed them she had shot her husband. She further related essentially the same sequence of events which she testified to at trial.
Raymond Cooper, firearms examiner at the Northwest Louisiana Crime Lab in Shreveport, testified the location of the person firing the shots that killed the deceased was within close proximity of the doorway from the kitchen into the bedroom, i.e., within the threshhold or just inside the bedroom within a two square foot area. He stated that the location of the shooter could *669 have been just inside the bedroom to the left where the door swung back.
Dr. George McCormick, II, forensic pathologist with the Bossier coroner's office and deputy coroner for Webster Parish, performed the autopsy on the deceased. He testified that the deceased died as a result of the four bullet wounds inflicted, three of which were in the chest and one which ricocheted off his head. It was his opinion that two of the bullets were fired within a distance of two feet or more, one within a distance of two feet or less, and one at a distance of less than two feet possibly less than six inches. His testimony contradicted the testimony of Mrs. Outz regarding the proximity of Mrs. Edwards to the victim when she fired the shots. He felt that she was standing in the area of the doorway but could not rule out the possibility that the shots were fired from inside the bedroom doorway slightly to the left. He further found nothing inconsistent with a theory that the shots were fired as the victim was moving toward the defendant. Finally, he concluded from the results of the autopsy that the victim was a strong muscular man, who was an abuser of alcohol.
Mrs. Edwards has never denied shooting her husband. She contends and always has contended that she never had any intention of killing her husband until he came at her in a threatening manner which made her believe he was going to kill her. It is her contention that she was justified in killing him in self-defense.

ASSIGNMENTS OF ERROR NOS. 20, 8, 14 AND 36
These assignments of error deal with the trial court's refusal to allow evidence of prior specific threats and acts of violence by the victim toward the defendant and evidence of the victim's bad character and reputation for violence.
Evidence of the victim's dangerous character or threats against the accused supports a plea of self-defense because it is relevant to show that the victim was the aggressor and to show that defendant's apprehension of danger was reasonable. State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976).
The foundation for the admissibility of such evidence is found in La.R.S. 15:482:
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.
The term "overt act" as used in connection with prosecutions where the plea of self-defense is involved, means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. See State v. Brown, 172 La. 121, 133 So. 383 (1931).
Prior to 1952, La.R.S. 15:482 required "proof" of an overt act or hostile demonstration before evidence of the victim's threats or dangerous character was admissible. Thus, we held that the overt act or hostile demonstration must be established to the satisfaction of the trial court. State v. Terry, 221 La. 1109, 61 So.2d 888 (1952); State v. Tobias, 218 La. 226, 48 So.2d 905 (1950).
However, the legislature amended La. R.S. 15:482 in 1952 to require "evidence" rather than "proof" of an overt act. In State v. Lee, supra, we held this amendment meant that:
"... when appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe upon the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law."
(331 So.2d at 459.)
See also La.C.Cr.P. Art. 802(2).
In the instant case, this is precisely what the trial court repeatedly did. It exercised a "credibility evaluation" to refuse the defendant the right to have the jury determine the merits of her plea of self-defense.
Defendant claimed initially she was looking for her husband on her way to work because of her concern for his condition *670 which was caused by the blow she inflicted with the crowbar. Failing to locate him at several places, she drove to Mrs. Outz's residence. She testified that after finding his truck there, she intended to go inside to let him know she knew he was there, to embarrass him and to inform him she intended to get a divorce. She stated that she carried the gun because she could talk to him without incident when it was in her possession or within her reach. Admittedly, she forced her way through the back door of the residence and turned on the light with the hand holding the gun. However, she stated that she never pointed the gun at him and only told him at the outset that she knew he would "be here again." Her version of the incident was that at that point the victim sprang from the bed, cursed her, and told her "... I told you I'd kill you if you come (sic) here again." She then testified that he came at her with his hands raised as he had done many times before, she started to retreat and she was prevented from successfully doing so because she ran or backed into the door or doorframe. She then looked at her husband again, saw he was almost upon her, and began shooting because "he had that same look as he had the time he tried to cut my throat..." She further stated that she kept shooting because he kept coming toward her. She believed that he was "right on her" and actually made contact with her arm before he fell. After the shooting, she stepped around her husband, who was still trying to grab her with his hands, placed the gun on the small bed, picked up the telephone on the night table between the beds and called the police.
Mrs. Outz's version of the incident was contrary to that of the defendant. However, she was clearly intoxicated, and there are inconsistencies in her testimony. Dr. McCormick's testimony contradicts her testimony insofar as his investigation revealed facts not inconsistent with defendant's statements that the defendant was charging her at the time he was shot. Mrs. Outz's testimony that Mrs. Edwards never entered the bedroom could be contradicted by the finding of the gun in the bedroom on the bed when the officers arrived a short time after the shooting.
Mrs. Edwards' version of the incident as told to the officers upon their arrival at the scene was consistent with her testimony at trial. The pictures of the bruises on her arm, buttocks, and back introduced at trial tend to corroborate her version that her husband made contact with her and that she backed into something while attempting to retreat. Additionally, Raymond Potter's testimony together with the exhibits showing string tracings from where the various bullets were fired also tends to corroborate Mrs. Edwards' version of the shooting.
We conclude that all of the aforediscussed evidence is sufficient to satisfy the "appreciable evidence of an overt act or hostile demonstration" test set forth in State v. Lee, supra. Defendant should not have been denied the right to have the jury determine the merits of her plea of self-defense based on all admissible evidence. The evidence of the victim's dangerous character and of prior threats against the defendant was erroneously excluded by the trial court.
Once evidence of an overt act is established on the part of the victim evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify her conduct; and (2) to help determine who was the aggressor in the conflict.
As pointed out in Lee, when the evidence is sought to be introduced to show the accused's state of mind, it must be shown that the defendant knew of the victim's prior threats or reputation. Once it is shown that the defendant had such knowledge, the scope of evidence allowed to indicate the victim's character is not limited to evidence of general reputation, but includes evidence of specific threats or acts of violence by the victim against the accused. State v. Boss, 353 So.2d 241 (La.1977). Conversely, when evidence of the victim's dangerous character [character evidence] is *671 sought to be introduced by a defendant for the second purpose [to prove that the victim was the aggressor], there is no requirement that the defendant have knowledge of the victim's prior acts or reputation. However, consistent with the evidentiary rule, which is not premised on defendant's knowledge of the victim's character, there still remains the general rule that character, whether good or bad, "depends upon the general reputation that a man has among his neighbors." La.R.S. 15:479. Under this rule, proof of a victim's character tending to prove who is the aggressor in a conflict must be established by the general reputation of the victim, not by specific acts. Only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor in the conflict. State v. Boss, supra.
Thus, under the jurisprudence set forth above, only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor in the conflict. Conversely, evidence of prior threats and violent acts [whether against the accused or against others] while inadmissible as character evidence, is admissible if defendant knew of them at the time of the offense for the purpose of showing defendant's reasonable apprehension of danger which would justify her conduct.
The trial court refused to allow defendant to offer the testimony of Deputy Steve Shaw to the effect that during the early morning hours of November 11, 1980 around 1:30 a.m. he saw the victim at the Minden Medical Center where he threatened to kill the defendant if she ever confronted him again. The defense does not argue that Mrs. Edwards was aware of or heard this threat, for if she did the evidence would have been admissible. The contention is that this threat is admissible to show the state of mind of the victim at the time of the fatal confrontation, relevant to who was the aggressor.
We hold that under the circumstances of the instant case the threat, even if uncommunicated to the defendant, is admissible. It is undisputed that the victim's state of mind is highly relevant in the instant case because defendant contended that she did not threaten him nor point the gun at him before he charged her, cursed her and told her he was going to kill her. The threat in question was not remote in time but uttered only some four and one-half hours prior to the fatal confrontation. Under these unique circumstances, the trial court erred in refusing to allow Deputy Shaw to testify regarding this threat. See State v. Barksdale, 122 La. 788, 48 So. 264 (1909); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. Weedon, 342 So.2d 642 (La.1977); State v. Sheppard, 371 So.2d 1135 (La.1979); 37 La.L.Rev. 1166 (1977).
Professor Wigmore would not disagree with this conclusion:
Where on a charge of homicide the excuse is self-defense, and the controversy is whether the deceased was the aggressor, the deceased's threats against the accused are relevant. The deceased's design to do violence upon the defendant is of some value to show that on the occasion in question he did carry out, or attempt to carry out his design. Moreover, it is the fact of his design, irrespective of its communication to the defendant, that is evidential ...
Wigmore on Evidence 3d Ed. § 110 at page 546.
We are not unaware of our holding in State v. Brent, 347 So.2d 1112 (La.1977) but distinguish it for the reasons that in the instant case the defendant testified she did not initially point the gun at her husband prior to his cursing her and charging her threatening to kill her. Furthermore, her testimony was that she attempted to retreat prior to the firing of the fatal shots.
Finding merit in these assignments of error, we must therefore reverse the conviction and sentence of the defendant in this case because she was erroneously denied the right to introduce admissible evidence in support of her claim of self-defense.
*672 Although not necessary to the result in the instant case, we will now consider other assignments of error asserted by defendant in an effort to avoid problems arising upon a retrial of this case.

ASSIGNMENTS OF ERROR NOS. 2 AND 4
In these assignments of error, defendant contends that the trial court erred in denying her motions to recuse the district attorney and his assistants and the trial judge.[3]
The applicable articles are La.C.Cr.P. Articles 680 and 671 which provide as follows:
Art. 680.
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
Art. 671.
In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
(2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree;
(3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;
(4) Is a material witness in the cause;
(5) Has performed a judicial act in the case in another court; or
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
In any cause in which the state, or a political subdivision thereof, or a religious body is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body is not of itself a ground for recusation.
In this assignment, defendant contends that District Attorney Henry Brown and his assistants are engaged in the practice of law together, i.e. prosecution of criminal cases, and that the assistants have personal interests in the case which are in conflict with the fair and impartial administration of justice. Although they are all engaged in private practice in addition to their duties in connection with the office of the district attorney, their only connection is in that office. Defense counsel equates that connection with that of partners in a private law firm.
At the outset we note that none of the assistant district attorneys who were actually involved in the prosecution of this case have ever represented the victim or the defendant nor have they ever represented anyone in connection with either of them. We do note that assistant district attorney Harmon Drew did represent three children of the victim by a former marriage in connection with their interest in his succession. Clearly, this evidences that he might have a personal interest or stake in the outcome of this case. However, the record reflects that he removed himself from any participation in this prosecution, was so disqualified by the district attorney and the court and was denied access by the court to the state's file from the case's inception.
*673 The recusal or disqualification of an assistant district attorney does not require the recusal of the district attorney or his other assistants. State v. Brazile, 231 La. 90, 90 So.2d 789 (1956). Additionally, in an action to recuse the district attorney, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Marcal, 388 So.2d 656 (La.1980).
The provisions of La.C.Cr.P. Art. 680(2) or (3) are inapplicable to the instant case, and the evidence does not preponderate that any of the assistants participating in the case were personally interested, biased or prejudiced to any extent in conflict with fair and impartial administration of justice.
The trial court did not commit error in refusing to recuse the district attorney or his assistants who prosecuted the case.
The motion to recuse the trial judge, Cecil Campbell, is primarily based on the allegation that Judge Campbell's two uncles who are brothers of the judge's father (also an attorney) are law partners of the first assistant district attorney. Defense counsel does not allege or infer any active bias, prejudice or personal interest on the part of the presiding judge but asserts the possibility that this relationship alone may subconsciously affect the judge's rulings to the prejudice of the accused.
It is well settled that a trial judge is presumed to be impartial. State v. Collins, 288 So.2d 602 (La.1974). For an accused to be entitled to the recusation of a trial judge on the grounds of bias, prejudice and personal interest such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegations. State v. Qualls, 377 So.2d 293 (La.1979).
Applying those principles to this case, we conclude that no grounds exist for the recusal of the trial judge. The trial judge did not commit error by denying defendant's motion to recuse.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 6, 13 AND 26
These assignments relate to the defendant's request for a unanimous jury verdict which was denied; the court's denial of defendant's motion to declare unconstitutional statutory and state constitutional provisions not mandating a unanimous jury under the facts of this case; the failure of the court to quash the indictment; and the refusal of the court to give special requested jury charges requiring a unanimous verdict.
In his argument, defense counsel contends that the shooting was clearly committed in the course of an aggravated burglary thus defendant should have been indicted and prosecuted for first degree murder. He suggests that the district attorney intentionally requested an indictment for second degree murder in order to avoid the unanimous verdict requirement in a prosecution for first degree murder. See State v. Goodley, 398 So.2d 1068 (La.1981).[4] This identical argument was raised in State v. Gilmore, 332 So.2d 789 (La.1976) where the defendant objected to the district attorney amending a first degree murder indictment in open court to charge second degree murder on the basis that he was deprived of a vested right to a unanimous jury verdict.[5] We rejected defendant's argument concluding that the district attorney was inherently empowered to amend the indictment to *674 charge a lesser included offense which amendment not only lessened the gravity of the charge but also eliminated the possibility of the death penalty thereby resulting in the elimination of the requirement of a unanimous verdict.
In the instant case, if the district attorney is inherently empowered to amend an indictment to charge a lesser included offense then it follows that he is inherently empowered to suggest or recommend to the grand jury an indictment for second degree murder, a crime of the same generic class as first degree murder but of a lesser degree. See also State v. Davis, 385 So.2d 193 (La. 1980); State v. Stewart, 389 So.2d 1321 (La.1980). Furthermore, defense counsel's allegations that the prosecutor used "unbridled and unguided discretion and arbitrary action" to guide the grand jury to indict for second degree murder in order to deny the defendant the right to a unanimous jury verdict are pure conjecture and without merit.
The indictment for second degree murder was a proper indictment. Second degree murder is punishable by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La.R.S. 14:30.1. Only cases in which punishment may be capital require a unanimous verdict. La.C.Cr.P. Art. 782. Manslaughter is a responsive verdict to the crime of second degree murder; therefore, no unanimous verdict is required. La.R.S. 14:31; La.C.Cr.P. Art. 814. Non-unanimous jury verdicts for twelve person juries are not unconstitutional. State v. Green, 390 So.2d 1253 (La.1980).
The lower court did not err in refusing to require a unanimous verdict or in overruling defendant's motion to quash the indictment.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 7 AND 19
Defendant contends the trial court erred in permitting the introduction of other crimes evidence [the earlier "crowbar incident"] and evidence that defendant had spent part of the early morning prior to the shooting at the home of her "paramour."
Outside of the jury's presence at trial, the court ruled that the state's answer to defendant's motion for discovery regarding the "crowbar incident" was adequate notice under State v. Prieur, 277 So.2d 126 (La. 1973), without ruling on its admissibility. Defendant argues however that no adequate notice was given detailing the offenses and the reason for their offering, no hearing was held to determine the adequacy of notice or the admissibility of this evidence, and no instructions were given the jury regarding their consideration of the evidence.
This argument is clearly without merit because the state at no point in the trial sought to introduce any evidence of this incident.[6] Although the state indicated outside the jury's presence that it intended to offer evidence pertaining to this incident, the evidence was introduced by the defense through the defendant's own testimony.
Defendant's second contention is that the trial court erred in allowing the prosecution to elicit evidence during cross-examination of the defendant that she had spent part of the early morning hours with her paramour. On direct-examination defendant testified at length about the crowbar incident, her following of her husband out of concern for his condition, and her other activities prior to the shooting. On cross-examination she was asked where she was between the hours of 3:00 and 5:00 a.m. After defense counsel objected, the jury was removed and the court was informed that the state intended to show that the defendant was at the home of her paramour at this time. The court ruled that the cross-examination was proper because the defense had gone into defendant's activities thereby entitling the prosecutor to full cross-examination since the testimony was relevant and material *675 to the responsive verdict of manslaughter on the question of whether or not defendant's blood had cooled as well as being relevant to the credibility of the testimony of the defendant that she was concerned about her husband's well-being.
Admittedly, this evidence was damaging to the defense; however, the defendant "opened the door" for its introduction by testifying concerning her activities between the prior altercation and the shooting. It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may go fully into it on cross-examination. State v. Nugent, 116 La. 99, 40 So. 581 (1906). Mere doubt as to the propriety or the extent of cross-examination is always resolved in favor of the cross-examination. State v. Lane, 292 So.2d 711 (La.1974).
Additionally, the defendant testified about her concern for the well being of her husband prior to the shooting; this evidence was relevant to negate her intent to locate the victim for the purpose of killing him or doing him great bodily harm. See La.R.S. 15:441. The state then had the right to rebut this contention by attempting to show defendant was not genuinely concerned about her husband's condition after the earlier incident. The evidence was also proper to attack her credibility on this point.
These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 16, 18 AND 24
In these assignments of error defendant complains the trial court erred in curtailing defense presentation of its case. Specifically, defendant complains the trial court erred in disallowing cross-examination of Mrs. Outz about a prior visit by Mrs. Edwards to the Outz residence, by refusing to allow defendant to testify about the prior visit, and by refusing to allow Tanya Edwards to testify regarding the "crowbar incident".
On direct-examination, the prosecutor asked the following question of Mrs. Outz:
Q. Had Mrs. Edwards ever been in your home before?
A. Yes, sir.
No further questions about this prior incident were asked. On cross-examination, defense counsel asked several questions about the prior visit without objection which revealed that Mr. Edwards had arrived at Mrs. Outz's home on a prior occasion in an intoxicated condition causing Mrs. Outz to put him to bed where he slept for several hours. Mrs. Edwards arrived thereafter with a gun, talked to Mr. Edwards, and left with him. At this point, the state objected to further testimony in this vein as being irrelevant and immaterial. Outside the jury's presence, defense counsel argued that according to a recorded statement he had from Mrs. Outz she would testify that on the prior occasion Mrs. Edwards had not threatened Mr. Edwards nor did he threaten her or act in a hostile manner, there was discussion of a divorce, and they had left together without any violence. It was asserted that the testimony was relevant to bolster defendant's contention that she carried a gun to prevent Mr. Edwards from harming her, to rebut the prosecution's contention that she entered the Outz home with the specific intent to kill or inflict great bodily harm, to rebut the state's contention that she had not acted in self-defense, and to explain her surprise when her husband attacked her on the occasion of the shooting.
The trial court sustained the objection on the grounds that this testimony was irrelevant and immaterial and also inadmissible because there had been no appreciable evidence of an overt act on the part of the victim toward the defendant.
We conclude that the cross-examination should have been allowed. It was not evidence of a prior bad act on the part of the victim and the state had gone into the matter partially on direct-examination. See State v. Nugent, supra: State v. Lane, supra; State v. Brown, 395 So.2d 1301 (La. 1981). The defense had the right to probe into the incident fully on cross-examination.
A more serious issue is presented regarding Mrs. Edwards' testifying independently *676 regarding this prior incident absent its surfacing as a result of direct-examination of Mrs. Outz. Obviously, the inference sought by such testimony was that since no threats were made by either the defendant or the victim toward each other nor did any violence ensue, Mrs. Edwards did not embark upon the latter encounter for the purpose of threatening defendant with her gun or with the specific intent to kill him or to do him great bodily harm and that she was surprised by his reaction.
Human action being infinitely varied, however, there is no reliable probative connection between the two incidents absent a sufficient showing that they were uniquely similar in circumstances to each other and not too remote in time. It is well recognized that a person may do a particular act once never to do it again. Not only may he never do it again, but there is no degree of probability that he will do it again. The conceivable intervening contingencies are too numerous. As Professor Wigmore states:
This principle has long been accepted in our law. That "the doing of one act is in itself no evidence that the same or like act was again done by the same person," has been so often judicially repeated that it is a commonplace. Wigmore on Evidence 3d Ed. § 192 at page 642.
The trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Stramiello, 392 So.2d 425 (La.1981). In the instant case, we cannot say that the trial judge abused his great discretion in disallowing Mrs. Edwards' testimony regarding the prior incident. In reality, it was in the nature of character evidence which is not generally proven by specific acts.
If this issue again arises on the retrial of this case, we conclude that the trial judge should conduct a hearing outside the presence of the jury to determine if the prior incident was so similar in circumstances and close enough in time to give it independent relevance.
The eight year old daughter of the defendant and the victim was called to testify on behalf of the defense. After examination in an attempt to establish her sufficient understanding to testify, the state objected to the child's testifying on the grounds of her "impressionable" and "imaginable" age stating that it did not feel that an eight year old child was competent to testify in a second degree murder trial.
A thorough reading of the transcript shows that Tanya knows her age and grade in school. She makes above average grades and understands the difference between telling the truth and telling a lie. She stated that she knew that she was to tell the truth and knew the meaning of the oath she tookthat God would punish those who lied. She further understood the nature of the court proceeding.
However, the trial judge stated that he did not believe Tanya to be a credible witness noting his observation that she hesitated when initially asked if she knew the difference between the truth and a lie and seemed shy in answering questions about her competency. The judge further noted that when questioned about the "crowbar incident" she testified like a "well oiled machine," and that when she first testified she told him that she had not discussed the case with anyone although later admitted she had discussed it with her mother, her mother's attorney, and one of her sisters. Finally, the judge stated for the record that while she had not remembered talking to him earlier in the week, she had done so making a plea on behalf of her mother which he did not intend to let her get on the stand and repeat to the jury.
La.R.S. 15:469 states:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
*677 In applying the statute, the rule is that the determination of the trial court as to whether or not a child has the required sufficient understanding is entitled to great weight because it has the advantage of seeing and hearing the witness. State v. Thompson, 364 So.2d 908 (La.1978), [eight year old third grade boy had sufficient understanding to testify]; State v. Francis, 337 So.2d 487 (La.1976), [eight year old girl had sufficient understanding to testify]; State v. Humphrey, 412 So.2d 507 (La.1982), [seven year old boy at time of crime occurrence and nine years old at time of trial had sufficient understanding to testify]. In Humphrey, supra, we stated that a child's sometimes hesitant answers do not necessarily indicate incompetency.
In the instant case, the record does not justify the trial judge's refusal to allow Tanya to testify. Her answers to a rather lengthy examination reveal sufficient understanding to be a witness. Admittedly, the concern that she might be a well coached witness who would make an impassioned plea to the jury may have been justified. Notwithstanding, these problems are better dealt with through traditional courtroom methods such as cross-examination, proper instructions by the court to Tanya and defense counsel, and proper objections by the state, rather than by excluding Tanya's testimony.
Tanya was an eyewitness to the "crowbar incident." Her testimony was relevant to corroborate defendant's version. We find that the trial judge abused his great discretion in determining that she was not a competent witness. However, we note that this error in and of itself does not constitute reversible error because defendant's detailed testimony concerning that incident was not contradicted by the state. Therefore, there was no need for corroboration. See State v. Singleton, 311 So.2d 881 (La.1975).

ASSIGNMENT OF ERROR NO. 9
In this assignment of error, defendant complains that the trial court erred in failing to order the state to conduct an investigation to determine whether or not any law enforcement officers, specifically Officer Steve Shaw and Deputy Sheriff Faye Wilson, heard the victim make threatening statements in reference to or directed at the defendant during the early morning hours prior to the shooting.
The state responded to the defense's three separate requests for exculpatory evidence that it was unaware of any exculpatory evidence other than the self-serving statement made by the defendant that she shot her husband because he attacked her. Defendant does not allege that the state already had exculpatory information within its possession, custody or control but argues that the state's refusal to investigate and determine whether or not such evidence existed constitutes a basis for a reversal.
The state has no duty to investigate to obtain exculpatory information, but rather has a duty to provide the defendant with exculpatory information which is within its possession, custody, control or knowledge. La.C.Cr.P. Articles 718 and 719.
Finally, defense counsel admits that he confirmed that such statements were made by contacting Officer Shaw. Clearly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 33
In this assignment of error defendant contends that the trial court erred in excluding psychiatric testimony regarding defendant's ability or capacity for formulating a specific intent to kill other than in a stressful or self-defense situation.
The defense called Dr. William H. Kimbell, a practicing medical doctor specializing in the field of psychiatry, who had examined the defendant on two occasions, specifically for the purpose of giving an opinion as to whether or not defendant had the mental capacity to formulate a specific intent to kill in a non self-defense situation. The mental condition attributed to Mrs. Edwards was the "abused or battered wife syndrome." The defense did not contend that Mrs. Edwards was insane and no plea of not guilty by reason of insanity had been entered. The state objected to such testimony *678 on the grounds of irrelevancy and that such psychiatric testimony invaded the fact finding province of the jury. The objection was sustained on this basis and later the trial court additionally ruled that this testimony would be disallowed because the defense had failed to give the notice required by La.C.Cr.P. Art. 726.[7]
The testimony of Dr. Kimbell was clearly inadmissible. In State v. LeCompte, 371 So.2d 239 (La.1979), we stated at page 243:
Louisiana Code of Criminal Procedure Article 651 provides in pertinent part:
"When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible."
Under this statute, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. Moreover, a mental defect or disorder short of insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966) and the cases cited therein. See also LSA-R.S. 14:14; LSA-C.Cr.P. Art. 651, Official Revision Comment (a); State v. Berry, La., 324 So.2d 822 (1975). In State v. Jones, La. 395 So.2d 95 (1978), we upheld a trial court's ruling which precluded counsel from arguing that defendant's "neurotic, prone-to-hysteria mental condition precluded the specific intent required for murder..." where defense had withdrawn her plea of not guilty by reason of insanity.
Initially, we note that specific intent is an ultimate legal conclusion to be resolved by the fact finders. Because an "expert witness must state the facts upon which his opinion is based," we can reasonably deduce that the testimony of an expert in psychiatry and psychoanalysis concerning the defendant's lack of specific intent would necessarily include testimony of a mental defect or condition. See LSA-R.S. 15:465. Stated another way, in order for the physician to testify as to the effect, no specific intent, she would testify as to the cause, mental condition....
We hold, therefore, that Louisiana Code of Criminal Procedure Article 651 precludes admission of an expert's testimony concerning the absence of specific intent when the defendant's plea is not guilty.
Again in State v. Wade, 375 So.2d 97 (La.1979), cert. denied 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980), we reiterated the rule in LeCompte by holding that due process is not offended by the Louisiana rule that a defendant cannot rebut evidence of specific intent by presentation of psychiatric testimony, without pleading not guilty by reason of insanity.
Because of the authorities cited above, we need not consider defendant's contention that the trial judge, not the state, supplied the objection of lack of notice to the state required by La.C.Cr.P. Art. 726.[8]
The trial judge did not commit error in refusing to allow the psychiatric testimony. This assignment lacks merit.

*679 ASSIGNMENT OF ERROR NO. 22
In this assignment of error, defendant argues that the trial court erred in excluding photographs offered by the defense during the presentation of the state's case in chief, and failing to order a mistrial after alleged improper remarks made by the prosecutor and comments on the evidence by the judge in sustaining the state's objection to the evidence.
During cross-examination of a state's witness, defense counsel showed him seventeen photographs. The photographs were identified and utilized to explain the scene of the crime to the jury. Seventeen state exhibits were also utilized by this same witness.
After the state offered its photographs into evidence, defense counsel attempted to file his photographs into evidence. The state objected stating "Counsel's aware, your Honor, his time to offer his evidence is when he presents his side of the case." The objection was sustained, the jury was removed, and defense counsel moved for a mistrial on the basis of the statement of the prosecutor contending that the statement suggested to the jury that the defense had an obligation and responsibility, not only to present a case, but to respond to the case that the state had thus far presented. He further argued that the ruling denied the defendant her right to present a defense. The court informed defense counsel that his ruling was based on La.C.Cr.P. Art. 765 which sets forth the normal order of trial and that he considered this an inappropriate time for the defense to offer the exhibits if objected to by the state. The defense did in fact offer the exhibits [with the exception of D-2] into evidence after the state rested, and they were exhibited to the jury.
The trial judge did not abuse his discretion in refusing defendant's request. State v. Madison, 261 La. 35, 258 So.2d 863 (1972). Further, the objection posed by the prosecutor was not a direct or indirect remark or comment on the failure of the defendant to testify in her own defense so as to mandate a mistrial under La.C.Cr.P. Art. 770(3). A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Harris, 383 So.2d 1 (La.1980).
We have consistently held that reasons given by the trial judge in the jury's presence for his rulings on objections for admitting or excluding evidence or explaining the purpose for which evidence is offered or admitted are not objectionable as comments or expressions of opinion provided they are not unfair or prejudicial to the accused. State v. Williams, 397 So.2d 1287 (La.1981). The words "objection sustained" are certainly not unfair or prejudicial to an accused.
Clearly, the trial court's ruling did not prejudice defendant. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 21
In this assignment, defendant contends the trial court erred in limiting the number of character witnesses the defense could call without stating adequate reasons for the restrictions imposed on the defense.
The record reflects that on April 22, 1981, the state filed a motion to limit the number of defense witnesses to testify as to the good character of the defendant to six. On the fifth and final day of trial [April 24, 1981] at the beginning of the day, the motion was heard by the court and the limitation imposed. Defense counsel objected to this limitation and informed the court that he had some seventy witnesses present but indicated that he did not intend to call all of them. The defense further requested that the court inform the jury that the defense was limited to six character witnesses which was done. The ruling came as no surprise to defendant because the court had informed defense counsel earlier in the week that he would be so limited. Defendant presented no argument as to how the defense would be specifically prejudiced or disadvantaged by this limitation. Later in the day, six character witnesses were called and were not cross-examined. Neither did the state attempt to rebut their testimony as to the defendant's good reputation.
*680 The general rule is that the trial court, in the exercise of judicial discretion, has the inherent authority to impose a reasonable limitation upon the number of character or reputation witnesses. This power has been declared to be essential to the proper administration of justice to avoid the unnecessary prolongment of trials by the introduction of cumulative testimony. See generally, "Character WitnessesLimiting Number," 17 A.L.R.3d 327. However, in limiting the number of character or reputation witnesses, the trial court must exercise a sound discretion in the context of the circumstances of the particular case and caution should be exercised to prevent prejudice or injury to the litigants or accused. See Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).
In the instant case, the state did not attempt to cross-examine, rebut or contradict the testimony of the defendant's character witnesses. The defendant was put on notice in advance of the calling of the witnesses that the limitation would be imposed, thus affording time to select the most favorable and knowledgeable witnesses.
To warrant a reversal, defendant must show that the trial court's action in limiting the number of character witnesses was an abuse of its discretion and affected substantial rights. La.C.Cr.P. Art. 921. Defendant has made no such showing.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 25, 27, 28 AND 29
These assignments deal with the failure of the trial court to give certain requested special charges submitted on behalf of the defense and with certain inadequacies in the charge given to the jury.
The trial judge refused to give special requested charges numbers 3, 5, 6, 7, 8, 9 and 10.[9] A thorough examination of the *681 special requested charges and the court's charge to the jury reveals no error except as to the omission of special charge number 10. With regard to that charge, because of our ruling prior reversing we find that it is applicable and should have been given. We do note however, that the substance of paragraph (2) in this requested charge is contained within the court's general charge.
This assignment is without merit except as to the portion of special requested charge number 10 specified above.

ASSIGNMENT OF ERROR NO. 30
In this assignment defendant contends that the trial court erred in denying his motion for a new trial based on prejudicial remarks made by the prosecutor during the state's rebuttal closing argument.
There, the prosecutor stated: "The law presumes that a person intends the natural consequenses of his actions." Defense counsel objected, the jury was removed, and a request was made that the court admonish the jury that the remark was incorrect, improper, and not the law. The jury returned and the court admonished them that arguments of counsel were not to be considered as evidence and may or may not be the law. The court then sustained the objections and admonished the jury to disregard the prosecutor's last statement.
In State v. Heads, 385 So.2d 230 (La. 1980), the trial court instructed the jury that "A man is presumed to intend the natural and probable consequences of his acts." We held this instruction to be reversible error under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979).
The prosecutor's remark does not fall under the mandatory grounds for mistrial under La.C.Cr.P. Art. 770. Assuming however, that the statement was error not curable by admonition under La.C.Cr.P. Art. 771, defense counsel intentionally chose not to move for a mistrial and requested an admonition which was given. Without his having moved for a mistrial, the defendant got the relief sought when the court gave the admonition. See State v. Kersey, 406 So.2d 555 (La.1981).
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 31, 32 AND 34
In these assignments of error, defendant maintains that there was insufficient evidence to support the verdict in that the state failed to prove beyond a reasonable doubt that the offense was not committed in self-defense.
In a homicide prosecution where the defendant claims self-defense, the state must prove beyond a reasonable doubt that the homicide was feloniously committed and was not perpetrated in self-defense. State v. Hicks, 395 So.2d 790 (La.1981).
The test to be applied in reviewing a case to determine whether the evidence supports a conviction is found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson, standard, the question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Guillot, 389 So.2d 68 (La.1980).
Viewing the evidence presented during trial in light of that standard, we conclude that a rational trier of fact could have returned a verdict of guilty of manslaughter.
This assignment lacks merit.
Because of our finding that defendant's conviction and sentence must be vacated and set aside we pretermit discussion of defendant's assignment of error relating to the excessiveness of the sentence imposed.
*682 Accordingly, for the foregoing reasons, the conviction and sentence of defendant are reversed and vacated and the case is remanded to the district court for further proceedings consistent with this opinion.
FRED C. SEXTON and ROBERT L. LOBRANO, JJ. ad hoc, dissent with reasons.
WATSON, J., dissents agrees with reasons assigned by SEXTON, J.
LEMMON, J., concurs and assigns reasons.
FRED C. SEXTON, Jr., Justice Ad Hoc, dissenting.
I respectfully dissent. I disagree with the treatment of Assignments of Error Numbers 20, 8, 14, and 36 with respect to the trial court's refusal to allow evidence of a prior specific threat by the victim toward the defendant.
This defendant forcibly entered the residence of Mrs. Outz and confronted her husband, the victim, and Mrs. Outz with a pistol, although the defendant contends she did not actually point the pistol at them. Under these circumstances, I view her as an aggressor who may not claim self-defense. LSA-R.S. 14:21. Furthermore, I am unable to distinguish this case from State v. Brent, supra, where this court under similar circumstances pointed out:
"In a civilized society the law cannot permit even a harassed and threatened individual to take the law into his own hands, track down his enemy, assault him with a pistol, and then claim justification for a homicide which follows because of prior threats." Brent, supra, at 1116.
The evidence here is admissible only if this defendant may claim self-defense. This view is not inconsistent with State v. Lee, supra, which authorized the admissibility of evidence of prior threats even where the only evidence of a hostile overt act came from the defendant's testimony and seemed tenuous. Thus Lee simply said that the trial judge may not make a determination of the viability of the hostile act evidence, if self-defense is relevant. But in this case self-defense is not relevant because the defendant was the aggressor.
Likewise I dissent from the treatment of Assignments of Error Numbers 16 and 18 where the defense complains that the trial court erred in not allowing the cross-examination of Mrs. Outz and the direct examination of the defendant concerning a prior visit by the defendant to Mrs. Outz's home when the victim was present. This evidence is related to the hostile act/prior threat issue and is only relevant if self-defense is an issue. Thus this evidence was, in my view, properly excluded.
In all other respects I agree with the majority opinion.
ROBERT L. LOBRANO, Justice Ad Hoc (DISSENTING).
Defendant asserts that when she confronted the victim he stated, "... I told you I'd kill you if you came (sic) here again," and then lunged toward her with his hands "raised as he had done many times before" (emphasis added).
Defendant argues that this behavior by the victim is evidence of an "overt act" or "hostile demonstration", thus justifying a plea of self-defense and invoking the rule of La.R.S. 15:482. The instant decision holds that the trial judge abused his discretion in refusing to admit evidence of bad character and prior threats by the victim in finding there was no "overt act" or hostile demonstration on the part of the victim moments before he was shot. I disagree. Testimony of an overt act does not become the evidence required of La.R.S. 15:482 unless, in the opinion of the trial judge, it is credible and competent so as to establish the facts which are necessary to constitute a hostile demonstration or overt act.
This court has defined an "overt act" as "any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm". State v. Brown, 133 So. 383 (La.1931), 172 La. 121 (1931).
The case at bar interprets our prior jurisprudence to mean that the defendant need not establish to the satisfaction of the trial *683 judge that the victim committed an overt act or hostile demonstration in order to introduce evidence allowed under 15:482. In support of this reasoning the court cites our holding in State v. Lee, 331 So.2d 455 (La.1976) in which we held 15:482 to mean:
"... when appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe upon the fact determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law." Lee, supra at 459.

The case at bar overrules that proposition. For, in the instant case, there is no "appreciable evidence". Under the decision in the case at bar, evidence of the dangerous character of the person slain or injured, or of his threats against the accused, will always be admissible. Under this decision the mere statement of the defendant that the victim shouted to her (after being provoked) that he was going to kill her and then lunged toward her with his hands raised "as he had done many times before" (emphasis added), will suffice as evidence of a hostile demonstration or overt act. I do not believe the Legislature by inserting "evidence" in Section 482, intended such a result especially in light of the fact that defendant with a gun sought out the victim. The court distinguishes our holding in State v. Brent, 347 So.2d 1112 (La.1977) from that of the instant case while citing several other holdings in support of its decision. A review of the cases shows the Brent holding is controlling while the others are easily distinguished. State v. Green, 335 So.2d 430 (La.1976), [victim was the aggressor and the victim had a weapon]; State v. Lee, (supra) [victim was the aggressor and victim had a weapon]; State v. Boss, 353 So.2d 241 (La.1977) [victim was the aggressor and victim had a weapon].
The facts in Brent (supra) closely parallel those of the instant case. Brent had been threatened by the victim before the shooting. He allegedly received, communicated through others, apparent threats upon his life. On the day of the incident, the victim and several others came to defendant's house looking for him. That knowledge, coupled with the various threats communicated to him, prompted him, he said, to look for the victim so as to confront him with his gun and scare him into letting him alone. Defendant tracked down the victim who was walking along a street with several other persons. Defendant got out of his car, gun in hand, and ordered the victim to halt. Defendant, moments later, shot the victim because he said he heard the victim call for a gun and saw a gun on the victim. At his trial, the defendant asserted self-defense and attempted to invoke the rule of La.R.S. 15:482. He argued to the trial judge he shot the victim as a reasonable response to his own fear of being gravely injured or killed when he thought the victim had a gun. The trial court found no "overt act" or "hostile demonstration" on the part of the victim and rightly so. This court affirmed defendant's conviction and sentence. Thus, I adhere to the reasons assigned by this Court in Brent, supra, at 1116.
"[6-8] Under our statutes and jurisprudence, such evidence is not admissible until defendant has made a showing with appreciable evidence that the victim made a hostile demonstration or overt act against him at the time of the incident which would have manifested to a reasonable person that he was in danger of grave bodily harm or of being killed. La. R.S. 15:482; State v. King, 347 So.2d 1108 (La.1977); State v. James, 339 So.2d 741 (La.1976); State v. Lee, 331 So.2d 455 (La.1976). Once that showing has been made, then the evidence can be brought to the attention of the jury which can then serve as factfinder and believe or disbelieve any or all of this evidence. Although the trial judge may not usurp the jury's function by choosing to disbelieve defendant's evidence of hostile demonstration or overt act, and thereby disallow evidence which should have gone to the jury of the victim's reputation or violent *684 nature, see State v. King, supra, State v. Green, 335 So.2d 430 (La.1976), and State v. Lee, supra, the judge must determine whether any evidence shows that decedent was the aggressor in the conflict and that defendant honestly acted in self-defense. See State v. James, supra; United States v. McIntire, 461 F.2d 1092 (5th Cir. 1972); Black v. State, 230 Ga. 614, 198 S.E.2d 314 (1973); Chacon v. People, 175 Colo. 437, 488 P.2d 56 (1971); Allen v. State, 38 Fla. 44, 20 So. 807 (1896); 1 A.L.R.3d 571 (1965). Self-defense is relative. It is available as an exculpation, or an excuse for assault, to an assaultee, not an assailant. And the time frame for assessing or characterizing the combatants commences at incipience of the confrontation. In a situation like the present, where a party searches for another, finds him, approaches with a loaded and pointed pistol (a menacing rather than indifferent act in light of the apparent bad blood existing between the parties), it is incongruous to label as self-defense a shooting by the assailant even if such shooting were to follow the victim's reaching for a pistol (a fact probably not shown by the evidence here but assumed for the purpose of argument). Self-defense in such a circumstance may be urged (and might have been, had the decedent rather than the defendant prevailed in the conflict) by the victim of the initial assault, not by the assailant. In a civilized society the law cannot permit even a harassed and threatened individual to take the law into his own hands, track down his enemy, assault him with a pistol, and then claim justification for a homicide which follows because of prior threats."
The record before us contains no evidence tending to show that at the time in question defendant would have been in any danger had she not precipitated the incident by illegally breaking and entering into Mrs. Outy's home and approaching the victim with a loaded gun in hand.
For these reasons defendant here may not invoke R.S. 15:482 and attempt to prove the victim's reputation for violence or prior threats even if she is able to show the victim's overt act at the time of this type of confrontation as she was the aggressor not the victim. I would affirm defendant's conviction and sentence.
I respectfully dissent.
LEMMON, Justice, concurring.
I offer these concurring thoughts primarily in response to the dissenting judge's suggestion that the trial court could have determined that defendant was the aggressor and accordingly excluded otherwise admissible evidence of prior threats or of dangerous character on the theory that the aggressor is precluded from claiming self-defense.
The "aggressor doctrine" should not be used to regulate the admissibility of evidence. Compare State v. Brent, 347 So.2d 1112 (La.1977). Whether or not a particular defendant was the aggressor is an issue for the jury which relates to the question of culpability. The trial court should not decide that issue as a basis for admitting or excluding evidence.
Once the trial court finds "appreciable evidence" of an "overt act" (or "hostile demonstration"), then defendant should be entitled to have the jury consider evidence tending to establish his self-defensive state of mind. The prosecution should not be permitted to invoke the "aggressor doctrine" at this point by arguing that the victim's "overt act" was provoked by defendant's prior "bringing on of the difficulty", and that defendant therefore had no right to offer otherwise admissible evidence in support of a claim of self-defense. Otherwise, the trial court could effectively limit defendant's right to assert his claim of self-defense before the jury (by restricting defendant's opportunity to prevent otherwise admissible evidence) based on the trial court's own determination that the defendant was the aggressor.
NOTES
[*] Judges William Norris, III, and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.
[1] Mrs. Maggie Townsend testified she was in the back bedroom of the house and heard a commotion. However, the testimony reveals Mrs. Townsend was obviously intoxicated and did not witness the incident.
[2] These officers were Sgt. Jack Tucker, Lt. Dewayne Rice, both of the Minden Police Department, and Deputy O.H. Haynes, III of the Webster Parish Sheriff's Department.
[3] Defendant's application for writs to this court concerning the trial court's rulings on these motions was denied January 22, 1981. See 396 So.2d 897 (La.).
[4] In Goodley, the defendant was prosecuted for first degree murder and the trial court accepted a 10-2 responsive verdict of manslaughter. This court reversed the manslaughter conviction holding that a unanimous jury verdict is required in a case where the defendant is being prosecuted under an unamended charge of first degree murder, a capital case, to render any verdict, notwithstanding the fact that the state may have stipulated it would not seek the death penalty.
[5] Defendant was convicted of manslaughter by a jury verdict of 11 to 1 and sentenced to serve 12 years at hard labor.
[6] Deputy Bloxom did identify the crowbar as being one he found on the seat of the victim's truck on the morning of the incident in question, but he was not asked any questions about the crowbar incident itself.
[7] La.C.Cr.P. Art. 726 provides:

A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.
B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.
[8] Defense counsel argues that the later objection of lack of notice was supplied by the judge and not the state. However, the prosecutor stated for the record immediately after the judge's comment that he would have objected on the basis of lack of notice at the proper time.
[9] (3) The Defense requests the Court charge the jury on the issue of specific intent to kill or cause great bodily harm as follows: "In determining whether the accused formulated a specific intent to kill or cause great bodily harm, evidence must establish the requisite mental element of specific intent as being present at the time of the commission of the alleged offense. Absent a believable and credible declaration from the accused as to her intent, intent must be proven to exist beyond a reasonable doubt by circumstantial evidence. The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

(5) The Defense requests the Court to charge the jury on the issue of the order of the jury's deliberations as follows: "I charge you that it is the responsibility of the prosecution to prove beyond a reasonable doubt that a homicide was not committed in self-defense. Therefore, you must first consider whether or not the prosecution has proved beyond a reasonable doubt that the alleged homicide was not committed in self-defense before proceeding to the question of what, if any, of the responsive verdicts available to you should be reached. You must decide by the same vote required to convict or acquit the accused that the prosecution has proven beyond a reasonable doubt that the offense alleged was not committed in self-defense before considering any other aspect of this case.
(6) On the issue of the "Aggressor Doctrine" pursuant to Louisiana R.S. 14:21, the Defense requests the Court to charge the jury as follows: "The aggressor may plead self-defense even under certain circumstances. It is not every act or insulting word that makes an accused person the aggressor. The question depends on the character and act and intentions of the accused, and is to be determined by the jury." (Authority: State v. Brown, 313 So.2d 581 (La.1975); State v. Coll 146 La. 597, 83 So. 844 (1920)).
(7) The Defense requests the Court to charge the jury as follows: "Evidence of flight may be taken by the jury as an inference of guilty knowledge or guilt on the part of the accused. The jury should, however, consider all circumstances before drawing this inference which is merely permissable and is not mandatory.
(8) The Defense requests the Court to charge the jury as follows: "The inquiry to be made by the jury regarding the actions of the accused in acting in self-defense pursuant to Louisiana's justifiable homicide statute as defined in Louisiana R.S. 14:20, is not whether in fact the deceased was going to inflict death or great bodily harm upon the accused but rather whether the accused reasonably was in apprehension of such an attack." (Authority: State v. Simmons, 349 So.2d 273 (La.1977)).
(9) The Defense requests that the Court include in its charge the entirety of the following statutes: Louisiana R.S. 14:16; Louisiana R.S. 14:19; Louisiana R.S. 14:20.
(10) The Defense requests the Court to charge the jury regarding the Aggressor Doctrine as follows: "Threats by the deceased are admissable as bearing on the issue of whether the deceased or the accused was the aggressor in the encounter." (Authority: State v. Vernon 197 La. 867, 2 So.2d 629 (1941); State v. Pairs 145 La. 443, 82 So. 407 (1919)).
"It is solely within the province of the jury to determine whether the accused sufficiently retreated or had the opportunity to retreat or withdraw from the conflict." (Authority: State v. Golden 113 La. 791, 37 So. 757 (1905); State v. Brown 313 So.2d 581 (La.1975)).